THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD SHIELDS, Appellant.

Second Department, June 13, 1977

*William E. Hellerstein* and *William J. Gallagher (Steven Lloyd Barrett* of counsel; *Ellen Schneider* on the brief), for appellant.

*John J. Santucci, District Attorney (Charles N. Walsh* of counsel), for respondent.

O'CONNOR, J. The defendant appeals from a judgment of the Supreme Court, Queens County, rendered November 14, 1974, convicting him, upon a jury verdict, of rape in the first degree and sentencing him to a term of imprisonment with a minimum of 10 years and maximum of 20 years. The judgment should be affirmed.

The record indicates that at about 9:15 o'clock on the evening of the 12th day of December, 1973, the complainant was on her way home from work. The complainant, a high school student who was employed during after school hours as a dental assistant, was then 17 years of age. While riding on the bus which took her to her home, she noticed a fellow passenger who was eating Chinese food and who stared at the bottom of her pants in a most peculiar fashion. She then identified that passenger as the defendant-appellant.

As she alighted from the bus, she noticed that the defendant followed her but that he started to cross the street away from her. Suddenly he reversed his direction, came to the complainant and grabbed her by the arm and by the hair. The complainant screamed and was promptly thrown into the adjacent bushes, where the defendant placed a hand over her mouth and threatened to stab her with a knife. She was dragged to the rear of the house where she was forcibly raped twice by the defendant, who also compelled her to commit an act of oral sodomy upon him.

Then the defendant walked the complainant out to the street, only to be met by the complainant's stepfather (hereafter father) who, alarmed at his daughter's failure to arrive home on time, was touring the neighborhood in his automobile. The complainant was shaking and trembling and, in response to the father's question, she screamed: "He raped

me." The father grabbed the defendant and the complainant jumped into the car, drove the short distance to her home and called the police.

As Officer Brown was leading the complainant out of her home to go to the hospital, she saw and, with a shriek, promptly identified the defendant, who was seated in a police radio car. The testimony given as to that identification indeed was bolstering, but, in view of the defendant's apprehension and the identification by the father at the scene of the alleged crime, it is of minimal significance.

The hospital examination and subsequent laboratory tests confirmed the presence of semen in the complainant's underclothes.

The father testified that he seized the defendant and tussled and fought with him for some 15 to 20 minutes before the police arrived. At one point in the course of the struggle, the defendant exclaimed: "So I did it, so what, so kill me." It was the father's testimony that from the time he first came upon the defendant holding the complainant by the arm as they crossed the street from the scene of the crime, until the police arrived, he never lost sight of the defendant, whom he later identified in court.

The pressing points presented upon this appeal are (1) that the "highly personalized and inflammatory summation" by the prosecutor demands reversal and (2) that the denial by the trial court of a *Sandoval* motion insofar as it sought to bar cross-examination for impeachment purposes of the defendant's 10-year-old conviction on an assault with intent to rape charge was such an abuse of discretion as to mandate reversal.

We reject both points and affirm the judgment of conviction.

## I

As to the prosecutor's summation: the summation is lengthy, covering some 27 pages of the record. In the main it keeps well within the proper guidelines established for a prosecutor's closing statement. It is the defendant's contention, however, that the cumulative impact of several manifestly improper utterances warrant a reversal. We do not agree. Unquestionably, several of the Assistant District Attorney's statements were unnecessary and unfortunate, i.e.: "I have never tried a case where the evidence was so clear and

convincing." And again, his theme, which was stated twice: "If it wasn't for her father, I told you before, being there at the exact right time, he wouldn't have been here. Probably he would have gotten away. It would have been another one we didn't get." To these potentially inflammatory statements, no proper objection was taken and, hence, such claims of error have not been preserved for review on appeal.

Moreover, it is quite clear that these utterances hardly amounted to the "verbal crudities and rantings" which both inflame the jury and degrade the People and which are roundly to be condemned and quickly to be reversed (cf. *People v Brosnan,* 32 NY2d 254, 274). We therefore conclude that although the prosecutor's remarks were totally out of order, they clearly did not rise to that level of misconduct which would form the basis for reversal.

In *People v Brosnan (supra)* in an outrageously inflammatory summation, the prosecutor characterized the defendant as "a liar, an animal, a beast" and stated "that the victim sustained the serious injuries she received because she could not respond to his sexual and animalistic desires" (p 262). There the court characterized the summation as "largely argument by epithet rather than by logic" (p 261). With it all, the court sustained the conviction and observed (p 262): "The District Attorney accepts the criticism that the summation was improper, but, on any view, it was hardly of sufficient forcefulness to influence the jury in the light of the overwhelming evidence and the stark facts of the brutal, irrational crime committed." The court concluded (p 262): "In this case, it is at most only arguable that the prosecutor's misconduct could have produced a greater adverse effect on the jury then did the bizarre facts of the crime, and the overwhelming evidence of culpability."

## II

As to the denial of the *Sandoval* motion, the record discloses that the court granted the motion as to several prior convictions but denied it as to a 1964 conviction of assault with intent to rape and a 1966 conviction of larceny of an automobile.

It is of course axiomatic that the scope of cross-examination always rests in the sound discretion of the trial court *(People v Duffy,* 36 NY2d 258; *People v Schwartzman,* 24 NY2d 241; *People v Sorge,* 301 NY 198); yet it is manifest that the

current and laudable trend is to strike a proper balance between the probative value of a prior criminal record and the danger of prejudice that such disclosure presents to an accused *(People v Sandoval,* 34 NY2d 371). While it is clear that there existed valid grounds for denying the motion as to the larceny conviction, it is equally apparent that its denial as to the assault-rape conviction was an improvident exercise of discretion which under other and ordinary circumstances might mandate reversal.

Although this prior conviction showed "a demonstrated determination deliberately to further self-interest at the expense of society * * * [and] goes to the heart of honesty and integrity" *(People v Sandoval, supra,* p 377), it was but one month short of 10 years of age. Involving, as it did, an act of impulsive violence, identical to the crime before the court, its use on cross-examination might well appear to have no other purpose than to show that the defendant "is of a criminal bent or character and thus likely to have committed the crime charged" *(People v Schwartzman, supra,* p 247). This, indeed, could be highly prejudicial.

To this extent, error was committed. However, keeping in mind these well-recognized but deliberately imprecise guidelines, let us now seek to apply them to the fact pattern here involved. First of all, it is not at all that clear that it was this *Sandoval* decision that prevented the defendant from taking the stand in his own defense. The defendant found himself in an utterly untenable and totally impossible position. His reasons for not taking the stand are at best speculative. Would he not better remain mute than to expose himself to the searing and searching cross-examination which would probe his reasons for being in the immediate neighborhood of the complainant's home, far away from his place of residence; how would he justify his attempt at flight when confronted by an irate father; his altercation and struggle with the father; and above all his statement: "So I did it, so what, so kill me". Other than with a flat denial, how was he to explain away the inexorable conclusion contained in that damning admission of guilt? In addition, the defendant would be hard put to explain away the prior felony conviction on the larceny charge. It is a compelling thought that perhaps the defendant's deliberately chosen posture was not to testify at all, *Sandoval* or no!

Recently this court, in a closely analogous situation, spoke as follows *(People v Watson,* 57 AD2d 143, 149-150): "We have

considered the possible effect of the defendant's failure to testify by reason of the impact that the previous rape conviction would have had in impeaching his testimony, and find such effect to have been negated by the burden of proof which rests upon the prosecution, particularly where the charge is rape (see *People v Stewart,* 85 Misc 2d 385, 390; cf. *People v Poole,* 52 AD2d 1010)."

Although it is far from the sole or absolute test, we must conclude, on balance, that the guilt of the defendant was clearly established not only beyond a reasonable doubt, but well beyond any conceivable doubt and, under these circumstances, to compel a 17-year-old girl and her family to undergo again the agony and the trauma of another sordid rape trial would indeed be to exalt form over substance.

Limited entirely to the facts before us, we conclude that the denial of the *Sandoval* motion as to the assault-rape conviction, although an improvident exercise of discretion, was not, in the totality, of sufficient moment to, and does not of necessity warrant, a reversal. On balance, a new trial is not here required because it would be useless. We have considered and found to be without merit the other claims of the defendant.

The judgment should be affirmed.

MOLLEN, J. (dissenting). I dissent and would reverse the judgment and order a new trial. The facts have been set forth in the majority opinion. Three issues have been presented by this appeal:

1. a ruling, after a *Sandoval* hearing, that the prosecutor would be permitted to cross-examine the defendant-appellant, if he chose to testify, as to a prior conviction for assault with intent to rape, which conviction occurred approximately 10 years prior to the instant trial;

2. the admission into evidence of bolstering testimony by two witnesses that the complainant had identified the defendant as the perpetrator of the alleged rape; and

3. the prosecutor's summation, wherein he interjected his personal opinions about the strength of the People's case and commented about rapists who get away without being caught.

I shall address myself to the appellant's contentions seriatim. The appellant first contends that the trial court erred in ruling, after a pretrial hearing, that if he took the stand and testified in his own behalf, the prosecutor would be permitted

to cross-examine him with regard to a conviction of assault with intent to rape, which conviction had occurred approximately 10 years prior to the instant trial.

I believe that the trial court's ruling was erroneous. The majority agrees that this ruling was "an improvident exercise of discretion" and that "its use on cross-examination might well appear to have no other purpose than to show that the defendant 'is of a criminal bent or character and thus likely to have committed the crime charged' ". The majority agrees that error was committed and that it could be highly prejudicial. However, thereafter, the majority ventures into the realm of speculation as to whether the appellant, in any event, would have taken the stand to testify. Rather than ramble through the thickets of conjecture with my distinguished brethren, I would merely note that clearly this concededly erroneous ruling at the conclusion of the *Sandoval* hearing effectively precluded any possibility that the appellant would take the stand and testify in his own behalf. Beyond peradventure, the prime purpose of the prosecution in seeking and obtaining the right to delve into the 10-year-old conviction upon cross-examination of the appellant was not to shed light on the issue of the credibility of the appellant, but rather to demonstrate his propensity to commit the crime charged in the instant indictment. This is quite obvious, independent of the resolution of any semantic conflict as to whether assault with intent to rape is a calculated or impulsive act of violence.

The similarity of that prior conviction and the instant charge, coupled with the predictable reaction of a jury, particularly bearing in mind the likely impact upon the emotions and passions of jurors caused by the nature of that prior conviction and the fact that the appellant stood accused a second time of a similar charge, effectively destroyed the right of the appellant to take the stand in his own behalf (see *People v Caviness,* 38 NY2d 227; *People v Sandoval,* 34 NY2d 371).

The appellant's second contention is directed to the fact that the prosecution elicited testimony from two of its witnesses, Police Officer Henry Brown and Mr. Lopez, that the complainant identified the appellant as the alleged rapist when she saw him sitting in the police vehicle. Clearly, such testimony was an improper bolstering of the complainant's testimony, and was in direct contravention of the holding in *People v Trowbridge* (305 NY 471). However, I agree with the

majority that under the facts of this case, identification was not truly in issue and, therefore, this error, in and of itself, was of minimal significance.

Lastly, the appellant contends that the prosecutor's summation contained impermissible expressions of personal opinions by the prosecutor, as well as inflammatory matter.

The following statements were made by the prosecutor:

"One advantage that the defendant did have, and that's obvious to all, is that he's got a competent attorney. I think Mr. Liss has done a great job, *and I think that he's worked with nothing and done a great job. However, during all the cases that I've tried, either as a defense counsel or as an Assistant District Attorney,* I have never to my recollection tried a case * * * [Defense counsel's objection was overruled]

*"I have never tried a case where the evidence was so clear and convincing.* * * *

*"Her father came at that point. If it wasn't for that, this man probably wouldn't be here, and he'd have gotten away, and many of them do, but this is one time, thank God, for some reason, he happened to show up at the right time.* * * *

"If it wasn't for her father, I told you before, being there at the exact right time, he wouldn't have been here. Probably he would have gotten away. *It would have been another one we didn't get.* * * *

*"I submit to you, as I did when I opened up, I have tried very few cases where the evidence is this strong."* (Emphasis supplied.)

The above-quoted remarks were clearly improper and prejudicial (see *People v Lovello,* 1 NY2d 436; *People v Kane,* 57 AD2d 575; *People v McNair,* 48 AD2d 860; *People v Coles,* 47 AD2d 905; *People v Johnston,* 47 AD2d 897; *People v Mantesta,* 27 AD2d 748). In the *Coles* case, despite the lack of objection by defense counsel, the majority held that remarks, not too dissimilar in thrust from those in the instant case, and not quite as inflammatory, were so prejudicial as to require reversal in the interest of justice. In *People v Tassiello* (300 NY 425) the Court of Appeals unanimously reversed a murder conviction on the sole ground of the prosecutor's improper comments in the course of his summation. The impropriety which the Court of Appeals found to be so gross as to require reversal was similar to that in the instant case in that it consisted primarily of the prosecutor's personal opinion as to

certain aspects of that case, and an innuendo that defendant's counsel knew that the defendant was guilty. It is further noteworthy that the Court of Appeals, in *Tassiello,* reversed despite the fact that, unlike the instant case, in response to the trial court's question the prosecutor recanted and withdrew some of his remarks.

I would agree with my distinguished colleagues and vote for affirmance if but one of the errors heretofore set forth had occurred. However, I am constrained to find that the cumulative impact of these errors was such as to deprive the appellant of a fair trial. The majority opinion appears to base its conclusion to the contrary on the strength of the People's case and the traumatic impact upon the complainant of a retrial. I, too, find repugnant the necessity to vote for reversal and a new trial, particularly in a case of this type. However, I do not perceive the constitutional right to due process and a fair trial to be inapplicable to instances where the People's case is strong or where the crime is heinous. In this regard, the Supreme Court of the United States, in the recent case of *Brewer v Williams* (430 US 387), involving the abduction and murder of a 10-year-old girl, reversed the conviction of murder in a majority opinion which concluded as follows (406): "The crime of which Williams was convicted was senseless and brutal, calling for swift and energetic action by the police to apprehend the perpetrator and gather evidence with which he could be convicted. No mission of law enforcement officials is more important. Yet '[d]isinterested zeal for the public good does not assure either wisdom or right in the methods it pursues.' *Haley v Ohio,* 332 US 596, 605 (FRANKFURTER, J., concurring in the judgment). Although we do not lightly affirm the issuance of a writ of habeas corpus in this case, so clear a violation of the Sixth and Fourteenth Amendments as here occurred cannot be condoned. The *pressures on state executive and judicial officers charged with the administration of the criminal law are great, especially when the crime is murder and the victim a small child. But it is precisely the predictability of those pressures that makes imperative a resolute loyalty to the guarantees that the Constitution extends to us all."* (Emphasis supplied.)

COHALAN, J. P., and HAWKINS, J., concur with O'CONNOR, J.; MOLLEN, J., dissents and votes to reverse the judgment and order a new trial, with an opinion.

Judgment of the Supreme Court, Queens County, rendered November 14, 1974, affirmed.