OPINION OF THE COURT
Chief Judge Cooke.
 After a trial in an action for wrongful death and conscious pain and suffering, the jury returned a verdict in favor of defendant. Seeking a new trial, plaintiffs challenge certain evidentiary rulings by the trial court. The primary question is whether CPLR 3117 (subd [a], par 2), which permits the use of an adverse party’s deposition for any purpose, overrides in all instances a trial court’s discretionary power to control the litigation before it. It does not have such an effect and, therefore, the order of the Appellate Division is affirmed.[1]
*641 Decedent, Eric M. Feldsberg, died in 1972, shortly after being struck by a mobile camper operated by defendant on the ramp of Exit 18 on the Connecticut Turnpike. Defendant testified that as he approached the exit ramp, he observed Eric leaning against the guardrail on the right shoulder of the ramp. Eric left his position at the guardrail and approached the pavement. Considering him a hitchhiker, defendant steered the camper to the left and continued to decelerate. Eric then stepped onto the pavement, dodged back and forth, and darted to the island on the left side of the exit. Defendant, apparently confused by Eric’s actions, turned the camper further to the left and stepped hard on the brake. These maneuvers were insufficient to avoid impact and Eric was thrown under the vehicle. Testimony from members of defendant’s family who were traveling with him lent support to defendant’s version of the accident.
Mrs. Petrea Anderson Harris, operating a vehicle immediately behind defendant, was a witness to the accident. Through her pretrial deposition, Mrs. Harris testified that defendant entered the deceleration lane close to the exit ramp. She observed Eric run onto the pavement, break stride, and then continue at a fast pace. She did not see Eric dodge or dart back and forth, but did observe defendant decelerate on the exit ramp, veer to the left and saw his brake lights prior to impact.
Both defendant’s negligence and Eric’s contributory negligence were the underlying issues at trial. Plaintiffs’ theory was that Eric, left off on the right shoulder of the exit ramp by another vehicle, observed the camper make a sharp turn onto the ramp and, in an attempt to avoid the oncoming camper, ran across the road to the island on the left of the ramp.
Defendant had been called as plaintiffs’ witness and had been excused after redirect examination. Plaintiffs, however, requested that defendant be available to give testimony in connection with certain photographs of the accident scene. The court at that point made clear that the recall was not to be for the purpose of repeating conflicts concerning the distances involved or to repeat areas of testimony already cov *642 ered. Counsel did not object and represented that he did not intend to conduct such an examination, indicating that the only purpose for recalling defendant was for his testimony concerning the photographs. However, when defendant was recalled, counsel for plaintiffs began the examination by asking defendant about his observations of decedent’s conduct. The court sustained a defense objection, reminding counsel of the previous ruling that the recall was to be for the limited purpose of marking the photographs. Counsel acknowledged his understanding of the initial ruling but asserted that he had three matters which came up during the intervening period. After the court refused to permit the additional inquiry, counsel further requested a ruling concerning the use of defendant’s deposition for one question claimed to be inconsistent, asserting that the deposition could be read without defendant being present on the stand. Plaintiffs’ counsel then asked if he could use the deposition with defendant on the stand. In light of the reservation concerning the examination of defendant and considering the use of the deposition to be a further examination of defendant, the court ruled that counsel could not make further use of the deposition.
Plaintiffs urge that the refusal to allow further use of the deposition imposed an unwarranted restriction on the presentation of their case and was contrary to the express terms of CPLR 3117 (subd [a], par 2). That rule provides, "the deposition of a party * * * may be used for any purpose by any adversely interested party”. This provision, adapted from former subdivision (d) of rule 26, now subdivision (a) of rule 32, of the Federal Rules of Civil Procedure (see First Preliminary Report of the Advisory Committee on Practice and Procedure, NY Legis Doc, 1957, No. 6[b], p 146), was intended "to authorize use of a party’s deposition unlimitedly against the deponent” (Sixth Report of the Advisory Committee on Practice and Procedure, NY Legis Doc, 1962, No. 8, p 318). The section permits use of the deposition as evidence in chief without making the party-deponent the witness of the party introducing the deposition or binding the offerer to the deponent’s version of events (see CPLR 3117, subd [d]; Spampinato v A. B. C. Cons. Corp., 35 NY2d 283). Plaintiffs would have this court read CPLR 3117 (subd [a], par 2), not as merely establishing the admissibility of the contents of a deposition as evidence of the facts asserted without a showing that the deponent is unavailable (see Siegel, Practice Commentaries, *643 McKinney’s Cons Laws of NY, Book 7B, CPLR 3117:3, p 491), but also as establishing an absolute and unqualified right to use the deposition at any time during the course of trial. We decline to adopt plaintiffs’ interpretation, however, for to do so would be to do violence to certain well-settled principles of trial practice.
A trial court is not without power to ensure the orderly and fair administration of justice merely because a particular item of evidence is technically admissible. Although there exist general rules for the conduct of trials, deviation from these rules may be necessary to fit the circumstances of a particular case. Indeed, the power to permit deviation is an integral part of the Trial Judge’s function. The court often has before it complex litigation and is duty bound to assure fairness and avoid unnecessarily protracted or confusing presentation of evidence. This power to control the case necessarily is of a discretionary nature, and its exercise is not reviewable save for a clear abuse of discretion (see Richardson, Evidence [10th ed — Prince], § 459, pp 449-450).
Thus, the order of introducing evidence and the time when it may be introduced are matters generally resting in the sound discretion of the trial court (Philadelphia & Trenton R. R. Co. v Stimpson, 14 Pet [39 US] 448, 463; 6 Wigmore, Evidence [3d ed], § 1867, p 498). This "cardinal doctrine” (6 Wigmore, § 1867, p 498) recognizes the court’s power to permit the introduction of evidence after the close of the offerer’s case (People v Koerner, 154 NY 355; Wright v Reusens, 133 NY 298, 307) or prohibit the same (Agate v Morrison, 84 NY 672). Similarly within the trial court’s control is the method and duration of cross-examination to determine a witness’ credibility or accuracy (see Langley v Wadsworth, 99 NY 61, 63). In addition, while the court may not deprive a party of the right to inquire into matters "directly relevant to the principal issues of the case against him” (People v Ramistella, 306 NY 379, 384), it may, in the proper exercise of discretion, restrict inquiry into collateral matters (see People v Braun, 158 NY 558, 567-569) or prohibit unnecessarily repetitive examination (Matter of Friedel v Board of Regents, 296 NY 347, 351).
Nor can it be doubted that recall of a witness for redirect examination is subject to the discretion of the court (see 6 Wigmore, Evidence [3d ed], § 1898, pp 570-572). Generally, sound trial practice demands that every witness be' questioned *644 in the first instance on all relevant matters of which he has knowledge and be excused at the completion of this testimony. In this manner, the litigation is contained within reasonable limits, the adversary is aware of the evidence he will have to meet and the jury is not unnecessarily confused. Recall at a later point in the trial not only may inject untoward administrative burdens into the litigation by reopening the whole range of prior testimony, but may also unfairly disadvantage the adversary in his ability to meet the proof or unnecessarily divert the jury’s attention away from the material issues of the case. In certain situations, however, the trial court may find it necessary to depart from this general rule and may do so in its discretion (see id., pp 570, 572, quoting People v Mather, 4 Wend 229, 249).
Given the considerable body of law recognizing the trial court’s discretionary power to control the case before it, we cannot accept plaintiffs’ contention that CPLR 3117 (subd [a], par 2) establishes an absolute right on the part of the offerer to use a deposition at any time during the presentation of the case, subject only to the exclusion of repetitious matter.[2] A deposition contains no more than testimonial evidence of the party-deponent and is merely the vehicle by which this evidence comes before the trier of fact. CPLR 3117 confers upon the deposition no special qualities rendering its use immune to ordinary rules of trial practice. Thus, the discretionary power to control the use of live witnesses applies with equal force to control the use of a deposition. Of course, in exercising its discretion, the trial court may not act arbitrarily or deprive a litigant of a full opportunity to present his case. But such an abuse of discretion does not infect the ruling here.
Notwithstanding plaintiffs’ protests to the contrary, it is readily apparent that the proffered use of the deposition was merely to continue the examination of defendant, to highlight one more apparent inconsistency. Faced with an adverse ruling concerning the scope of examination on recall, plaintiffs’ counsel asserted the right to read the deposition without defendant on the stand. In the circumstances of this case, the trial court could properly reject this attempt to circumvent its ruling.[3]
*645 Plaintiffs had ample opportunity to present any inconsistencies between defendant’s trial testimony and his deposition. Indeed, after calling defendant to the stand, counsel for plaintiffs conducted an exhaustive examination into defendant’s perceptions and reactions and confronted him with inconsistencies in his deposition. Defendant testified fully concerning the distance between the vehicle and decedent when decedent started to move across the exit ramp. Plaintiffs’ counsel had the opportunity then to use the allegedly inconsistent statement in the deposition. Either through inadvertence or as part of a conscious strategy, he failed to do so.
After affording plaintiffs a full opportunity to elicit testimony concerning the distances involved, the trial court, in an effort to control the case before it, could limit re-examination, through either defendant or his deposition, into matters covered extensively in earlier examination. Whether viewed as a continued examination of defendant on recall or simply as reuse of the deposition, the trial court could properly reject plaintiffs’ attempt to do indirectly what it had ruled could not be done directly.[4]
Of course, this is not to say that the exclusion of a deposition is proper merely because the party-deponent has already testified or is present and available (see Spampinato v A. B. C. Cons. Corp., 35 NY2d 283, supra; Perkins v New York Racing Assn., 51 AD2d 585; Rodford v Sample, 30 AD2d 588; Merchants Motor Frgt. v Downing, 227 F2d 247). Rather, we simply find it inappropriate to establish a per se rule which would strip the court of all power to prevent unnecessary repetition or unfair surprise simply because a deposition is offered (see Coughlin v Capitol Cement Co., 571 F2d 290, 308, n 31; Fey v Walston & Co., 493 F2d 1036, 1046). Like all other evidence, the use of the deposition is subject to the trial court’s control.
Indeed, exclusion of the deposition worked no prejudice to *646 plaintiffs. Although characterizing the deposition testimony as directly contradicting defendant’s trial testimony, a closer examination reveals that the conflict is more apparent than real. At the deposition, defendant testified that decedent was approximately 20 feet away when he went directly in front of the vehicle. Defendant testified at trial that when decedent took one or two steps onto the concrete he was 25 to 50 yards away, when he moved further over the concrete slab he was about 20-25 yards away and finally, when he darted back and forth, he was between 5 to 15 yards away. Thus, the portion of the deposition sought to be introduced apparently conflicted with testimony relating to a different point in time; any remaining discrepancy is of minor significance. Additionally, although there was sufficient evidence to show that defendant was negligent, there was ample evidence to support a finding that decedent was contributorily negligent. In light of the evidence and plaintiffs’ considerable attack on defendant’s credibility, the exclusion of the offered portion of the deposition, even if it were deemed erroneous, would not warrant reversal.
 Turning then to plaintiffs’ additional assignments of error, we find no basis for reversal. Addressing defendant’s testimony that there were no skid marks from his vehicle, plaintiffs sought to introduce testimony of an expert as to the cause of skid marks. Assuming without deciding that this was a proper area for expert testimony, this testimony was properly excluded. The investigator was not shown to have been familiar with the circumstances of the particular accident and, thus, in the absence of a proper foundation, any testimony concerning the lack of skid marks would have been speculative. Similarly proper was the exclusion of a transparent overlay which purported to represent the distances at the accident scene. As the measurements were made by pacing the distances, the trial court could properly exclude the overlay as not presenting accurate figures for the jury’s consideration.
Accordingly, the order of the Appellate Division should be affirmed.

. In reaching the merits of the instant appeal, it is first noted that defendant incorrectly argues that the dissent at the Appellate Division was not on a question of law and thus precludes an appeal as of right (see CPLR 5601, subd [a]). The dissent did not consider the trial court’s ruling merely an improper exercise of discretion. *641 Rather, the dissent, in essence, viewed CPLR 3117 as prohibiting the trial court’s limitation on the use of the deposition. The dissent, therefore, was on the law and the appeal is properly before the court.

. Plaintiffs also place reliance on CPLR 4514, which permits introduction of a prior inconsistent statement sworn or subscribed by the witness for purposes of impeachment. This section, however, no more limits the trial court’s general powers of control than does CPLR 3117.

. As part of the ruling, the trial court stated that plaintiffs had elected to call *645 defendant and use the deposition in the course of that examination and could not thereafter offer into evidence the deposition alone. If the court considered CPLR 3117 to mandate such an election, this portion of the rationale was erroneous. The record, however, reveals that the court’s ruling was predicated primarily on an exercise of discretion after a consideration of the circumstances of the particular case.

. The argument that the inconsistent statement may also be considered an admission does not render the trial court’s ruling erroneous. Plaintiffs exploited defendant as a witness through both live testimony and the deposition. Plaintiffs simply were not deprived of a meaningful opportunity to present material evidence to the trier of fact.