OPINION OF THE COURT
Joan B. Lefkowitz, J.
In an action for breach of contract and return of $445,000 *639 as a down payment on the purchase and construction of a one-family residence that was never built, the plaintiffs also made claim against defendant Utica Mutual Insurance Company (hereafter referred to as Utica) for the penal sum of a bond it issued in favor of the seller-builder. On March 6, 1992 the court denied motions for summary judgment regarding the cause of action against Utica and directed that a hearing be held on the questions concerning delivery of the bond and the actions of the parties pertaining thereto.
Thereafter, Utica moved to strike the case from the calendar so as to afford it time to conduct pretrial discovery. By decision of April 7, 1992 the court granted the motion and directed that pretrial discovery as to the bond issues be completed within 90 days.
Little or virtually no pretrial discovery was attempted during the aforesaid 90-day period. The case was called in for trial during the first week in March 1993 and a jury selected. The trial commenced on March 4, 1993, continued on March 5 (a Friday), March 8 and was completed by rendition of the jury’s verdict on March 9, 1993. That verdict exonerated Utica from liability on the finding that the bond had been rejected by plaintiffs or their agents.
On March 5, 1993, Utica’s counsel served a subpoena ad testificandum and subpoena duces tecum on David Lobel, Esq. (to testify) and his law firm (to produce records). Mr. Lobel and his firm had been prior counsel to the defendants and Utica’s attorney believed that they possessed relevant information on the issues being tried. The subpoenas required Mr. Lobel’s presence in court at 10:00 a.m. March 8, 1993. On March 5, 1993, a member of Mr. Lobel’s firm sent a letter to Utica’s counsel by facsimile and regular mail (with a copy to the court by Federal Express) stating that Mr. Lobel’s recollection of events with regard to the case were vague, any communications were privileged and all records had been returned to the codefendants. The letter concluded that Mr. Lobel would not appear in court.
On March 8, 1993, on being apprised of the nonappearance of Mr. Lobel and after Utica’s counsel reaffirmed the potential importance of his testimony, I called Mr. Lobel at his office in New York City in the presence of trial counsel. Mr. Lobel apologized for not being in court. He said he was very busily engaged in a litigated matter that required his immediate attention. He reiterated the salient points of the letter that he *640 had no real recollection of the events herein and no records to produce. Utica’s counsel then spoke to Mr. Lobel and was told the same thing. Notwithstanding Mr. Lobel’s disinclination to appear, on Utica’s counsel’s insistence that he attend, the court requested Mr. Lobel to honor the subpoena and I said I would accommodate his schedule so as to enable him to return to his office as soon as possible.
Mr. Lobel appeared on time for commencement of the afternoon session on March 8, 1993 during presentation of Utica’s defense. The court instructed Utica’s counsel to put Mr. Lobel on the stand out of turn, but Utica’s counsel desired to proceed with another witness and then follow with Mr. Lobel. Apparently, Utica’s counsel spoke to Mr. Lobel just prior to commencement of the afternoon session and Mr. Lobel again stated he had no information to offer.
At that point the following transpired:
"the court: What we’re going to do now is out of the presence of the jury. There is a witness, Mr. Lobel, subpoenaed by Mr. Rowen. Is that correct?
"mr. rowen: That’s correct.
"the court: Mr. Lobel has appeared, of course, on time. I think I spoke to him about 11:30.
"You’ve been subpoenaed, and I know you have work back in your office, and I certainly appreciate your coming down here today. Can you take the stand.
"mr. rowen: I’m going to excuse him.
"the court: Why did you have me call him?
"mr. rowen: Because I intended that I would put him on, I’d show him records. He said he doesn’t remember them.
"I spoke to him on the phone this morning too, and he was the one who dealt with Regina Saat. I don’t want to take him out of turn. I have my first witness on, and so I’m willing to excuse him.
"the court: He did tell you on the phone he doesn’t have any records, and he told you all that on the phone, and you wanted him to come down anyway?
"mr. rowen: That’s true, that he didn’t have any records, but it’s one thing for an attorney to tell me on the phone he doesn’t have records; it’s another thing if you wish to put him on the stand and have him sworn and have him state that he doesn’t have records.
*641 "the court: He’s your witness. If you want to excuse him, you can excuse him.
"me. rowen: I’m going to excuse him.
"the court: Thank you very much for coming down, Mr. Lobel.”
Mr. Lobel and his firm have moved for sanctions against Utica’s counsel, James Rowen, Esq., and Utica pursuant to part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR part 130).
Section 130-1.1 (a) provides in pertinent part: "The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney’s fees, resulting from frivolous conduct as defined in this Part. In addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130.3 of this Part.” Subdivision (d) states the award may be made pursuant to motion "or upon the court’s own initiative”. Frivolous conduct includes conduct designed to "harass or maliciously injure another” (22 NYCRR 130-1.1 [c] [2]).
Mr. Rowen argues that movants are not parties and lack standing to bring the motion. The court rejects that technical reading of the sanctions rule, particularly since it could have acted sua sponte. Rather, the court is of the opinion that a nonparty with a sufficient nexus to the alleged frivolous conduct, who is involved in the litigation, does have standing to request sanctions. (Cf., Westmoreland v CBS, Inc., 770 F2d 1168 [DC Cir 1985] [nonparty witness who refused to permit videotape at pretrial deposition entitled to sanctions under rule 11 of the Federal Rules of Civil Procedure].)
Mr. Rowen’s further technical argument that movants waived their right to seek sanctions by failing to move to quash the subpoenas is also rejected as meritless, as a failure to move to quash has absolutely nothing to do with whether counsel’s conduct thereafter was frivolous.
Clearly the court has inherent authority to vary the sequence of trial and the presentation of the order of witnesses thereat. (Feldsberg v Nitschke, 49 NY2d 636, 643 [1980] [such power "is an integral part of the Trial Judge’s function”], *642 rearg denied 50 NY2d 1059 [1980]; 88 CJS, Trial, § 96; Richardson, Evidence § 459 [Prince 10th ed]; Fisch, New York Evidence § 326 [2d ed]; 105 NY Jur 2d, Trial, § 344; 4 Weinstein-Korn-Miller, NY Civ Prac |[[j 4011.05, 4011.06, 4011.06a; CPLR 4011.) The court occasionally does direct a variance in production of witnesses so as to accommodate the time schedules of certain professionals such as physicians, attorneys and police officers. Thus, it was not unusual for the court to direct Mr. Rowen to examine Mr. Lobel at the commencement of the afternoon session on March 8, 1993. Mr. Rowen’s present excuse that he did not want Ms. Saat, the next scheduled witness, to tailor her testimony to Mr. Lobel’s, is belied by Mr. Rowen’s own comments in court and the fact that Ms. Saat was excluded from the courtroom when witnesses were testifying.
The court strongly believes that Mr. Rowen’s actions were unprofessional, discourteous and egregious. To subpoena a person and require him to travel to New City from New York City — an approximate one hour drive by automobile if traffic is light — and then refuse to swear him in when given the opportunity to do so constitutes frivolous conduct. Mr. Row-en’s actions were frivolous within the meaning of subdivision (c) (2) of section 130-1.1.
Mr. Lobel calculates his loss or cost of attendance on March 8, 1993 at $907.50, at $165 per hour for a round trip and in-court appearance time of 5!á hours, plus $247.50 in legal time to prepare the subject motion. However, costs cannot be imposed as they are awarded only to a party or counsel to a party but sanctions may and are to be imposed under subdivision (a) of section 130-1.1.
The court concludes that Mr. Rowen shall be sanctioned by imposing a fine of $500 against him personally. Payment shall be made to the Clients’ Security Fund within 30 days after this date (22 NYCRR 130-1.3). Mr. Rowen shall file an affidavit with the court within said time to the effect that the fine has been paid by him from his own funds and will not be reimbursed by his client.