OPINION OF THE COURT
Jack M. Battaglia, J.
This personal injury action came to this court for trial with a motion by defendant Michael Olaskowitz for an order “precluding the plaintiff and the co-defendants from making reference at trial to the prior criminal conviction [sic] of [Defendant], on the grounds that the prior convictions [sic] is unduly prejudicial, highly inflammatory and is extremely remote in time and does not involve moral turpitude” (see order to show cause dated Jan. 8, 2013). Plaintiff opposed the motion, relying upon CPLR 4513 and related case law. The court granted defendant’s motion on the record, promising a written decision that more fully elaborated the court’s reasons.
The verified complaint of plaintiff Stanford Tripp alleges that, on July 22, 2009, he sustained injury when a “masonry wall located between the backyards of 95 Sackman Street and 93A Sackman Street, Brooklyn, New York collapsed causing Plaintiff to fall from and be crushed by said wall” (see verified complaint ¶ 25). The property located at 95 Sackman Street is owned by defendants John Williams and Earline Barrett; the property located at 95A Sackman Street is owned by defendant Michael Olaskowitz. Plaintiff has settled with defendants Williams and Barrett.
Defendant Olaskowitz was arrested in New York County on March 22, 1986, and was convicted on January 15, 1988 after trial on multiple charges under Penal Law § 130.40, now called criminal sexual conduct in the third degree, and section 130.45, now called criminal sexual conduct in the second degree, both felonies. On June 26, 1990, the First Department reversed those convictions and ordered a new trial. (See People v Olaskowitz, 162 AD2d 322 [1990].)
Defendant Olaskowitz was arrested in Bronx County on June 6, 1986, and pleaded guilty on January 22, 1988, to a single count under Penal Law § 130.40. He was sentenced to imprisonment for one year.
On August 13, 1990, defendant Olaskowitz pleaded guilty to one count under Penal Law § 130.40 and two counts under Penal *320 Law § 130.45. He was subsequently sentenced to 1 to 3 years on the section 130.40 count, and 18 to 54 months on each of the section 130.45 counts, all to be served concurrently.
Mr. Olaskowitz testified at his examination before trial that he was incarcerated for six years, was released in 1993, and has not been convicted of a crime since. There is no evidence in the record to dispute him.
CPLR 4513 states, “A person who has been convicted of a crime is a competent witness; but the conviction may be proved, for the purpose of affecting the weight of his testimony, either by cross-examination, upon which he shall be required to answer any relevant question, or by the record.” If CPLR 4513 is understood to deprive a trial court of all discretion in controlling the use of a criminal conviction for impeachment, defendant’s motion would necessarily be denied. But this court does not understand the statute and the relatively limited case law on its application as having that effect.
Appellate authority weighs in favor of permitting impeachment in a civil action with the criminal convictions of a party or witness. Where the trial court permitted the impeachment, the ruling has been upheld on appeal. (See Morgan v National City Bank, 32 AD3d 1264, 1265 [4th Dept 2006]; Pope v New York City Tr. Auth., 244 AD2d 263, 264 [1st Dept 1997]; Scotto v Daddario, 235 AD2d 470 [2d Dept 1997]; Murphy v Estate of Vece, 173 AD2d 445, 446-447 [2d Dept 1991]; Able Cycle Engines v Allstate Ins. Co., 84 AD2d 140, 142-143 [2d Dept 1981]; see also Vernon v New York City Health & Hosps. Corp., 167 AD2d 252 [1st Dept 1990].) Where the trial court precluded impeachment with a criminal conviction, and there were other grounds for reversal, the preclusion contributed to reversal (see Sansevere v United Parcel Serv., 181 AD2d 521, 522-523 [1st Dept 1992]; Del Cerro v City of New York, 46 AD2d 898, 898-899 [2d Dept 1974]); or the preclusion was at least noted as error (see Moore v Leventhal, 303 NY 534, 538-539 [1952]; Sauer v Diaz, 300 AD2d 1136, 1137 [4th Dept 2002]). In two cases, the preclusion was found to be error, but “harmless.” (See Cruz v Long Is. R.R. Co., 22 AD3d 451, 454 [2d Dept 2005]; Burton v New York City Hous. Auth., 191 AD2d 669, 670-671 [2d Dept 1993].)
On the other hand, in Acunto v Conklin (260 AD2d 787 [3d Dept 1999]), the trial court “precluded cross-examination of plaintiff concerning a forgeiy conviction in an effort to impeach his credibility” (see id. at 789). While ordering a new trial on other grounds, the Third Department noted that it could not *321 say that the trial court “abused its discretion” in precluding the cross-examination, stating, “It is within the sound discretion of Supreme Court to control the manner in which proof is presented at trial especially with regard to matters affecting a witness’s credibility and accuracy.” (See id. at 790; see also Davis v McCullough, 37 AD3d 1121, 1122 [4th Dept 2007] [court did not abuse its discretion in curtailing cross-examination concerning criminal convictions].) The Second and Fourth Departments have also spoken in terms of the trial court’s discretion in determining the use of criminal convictions for impeachment purposes. (See id.; Morgan v National City Bank, 32 AD3d at 1265; Sauer v Diaz, 300 AD2d at 1137; Burton v New York City Hous. Auth., 191 AD2d at 670.)
In articulating the role of trial court discretion, the Court in Acunto v Conklin relied on two Court of Appeals decisions, neither of which addressed specifically the use of criminal convictions for impeachment, but each of which stressed the trial court’s discretion on cross-examination for impeachment. (See Acunto v Conklin, 260 AD2d at 790, citing Feldsberg v Nitschke, 49 NY2d 636, 643 [1980], and Martin v Alabama 84 Truck Rental, 47 NY2d 721, 722 [1979].)
The Court of Appeals decision in Feldsberg v Nitschke (49 NY2d 636 [1980]) is particularly pertinent here. The question before the Court was “whether CPLR 3117 (subd [a], para 2), which permits the use of an adverse party’s deposition for any purpose, overrides in all instances a trial court’s discretionary power to control the litigation before it.” (See id. at 640.) The Court held that CPLR 3117 “does not have such an effect” (see id.), noting at one point that “CPLR 4514, which permits introduction of a prior inconsistent statement sworn or subscribed by the witness for purposes of impeachment. . . , no more limits the trial court’s general powers of control than does CPLR 3117” (see id. at 644 n 2). “A trial court is not without power to ensure the orderly and fair administration of justice merely because a particular item of evidence is technically admissible.” (See id. at 643; see also Cheathem v Ostrow, 100 AD3d 819, 819 [2d Dept 2012].)
Taking Feldsberg v Nitschke (49 NY2d 636 [1980]) a step further, CPLR 4513 “no more limits the trial court’s general powers of control” than does CPLR 4514 (see id. at 644 n 2). Recognizing, however, the trial court’s discretion begs questions as to how that discretion is to be exercised. Even those civil cases that explicitly acknowledge the trial court’s discretion are conclusory in their rulings, requiring resort to first principles.
*322 As articulated in the well-known Court of Appeals decision in People v Sandoval (34 NY2d 371 [1974]), the overriding standard governing the “sound discretion” of the trial judge over the nature and extent of cross-examination (see id. at 374) is “whether the prejudicial effect of impeachment testimony far outweighs the probative worth of the evidence on the issue of credibility” — a standard “easy of articulation but troublesome in many cases of application” (see id. at 376). But application is assisted by several principles.
“Evidence of prior specific criminal, vicious or immoral conduct should be admitted if the nature of such conduct or the circumstances in which it occurred bear logically and reasonably on the issue of credibility.” (34 NY2d at 376.) “A demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity.” (Id. at 377.) “Lapse of time . . . will affect the materiality if not the relevance of previous conduct.” (Id. at 376.) But “Commission of perjury or other crimes or acts of individual dishonesty, or untrustworthiness (e.g., offenses involving theft or fraud, bribery, or acts of deceit, cheating, breach of trust) will usually have a very material relevance, whenever committed.” (Id. at 377.)
“On the other hand, crimes or conduct occasioned by addiction or uncontrollable habit, as with alcohol or drugs (again, unless independently admissible to prove an element of the crime charged . . . ), may have lesser probative value as to lack of in-court veracity.” (Id.) “[(Questions as to traffic violations should rarely, if ever, be permitted.” (Id.)
The principles articulated in Sandoval (34 NY2d 371) are applicable to civil, as well as criminal, actions. (See Badr v Hogan, 75 NY2d 629, 634 [1990]; McNeill v LaSalle Partners, 52 AD3d 407, 409-410 [1st Dept 2008]; Matter of Czop v Czop, 21 AD3d 958, 960 [2d Dept 2005]; Matter of Carlos V., 192 AD2d 661, 662 [2d Dept 1993] [“Whether the probative worth of evidence of specific criminal acts on the issue of credibility outweighs the risk of unfair prejudice is a matter for the hearing court”], citing People v Sandoval, 34 NY2d 371, 375 [1974]; Gedrin v Long Is. Jewish-Hillside Med. Ctr., 119 AD2d 799, 799 [2d Dept 1986].)
The risks of uncontrolled use in civil trials of criminal convictions for impeachment are similar to, but, of course, not the same as, the risks in criminal trials. In a criminal trial, there is the risk that “apprehension of the introduction of evidence of *323 the defendant’s prior criminal, vicious or immoral conduct will ‘undesirably deter the defendant from taking the stand and thereby deny the jury or court significant material evidence’ ” (see People v Grant, 7 NY3d 421, 424 [2006], citing Sandoval, 34 NY2d at 376]), and the risk that “the testimony to be elicited will ‘have a disproportionate and improper impact on the triers of fact’ ” (see id.). “When the prior crime is identical or similar to the offense charged the jury may, improperly, consider it as evidence of the defendant’s predisposition to commit the crime charged.” (People v Bennette, 56 NY2d 142, 147 [1982].) “Even where . . . the prior crime is essentially different in nature from the offense charged the defendant may be prejudiced if the jury views him as a person worthy of punishment because of his past record.” (Id.)
Although a party in a civil action, unlike a criminal defendant, does not have the right not to testify (and avoid the prejudicial effect of impeachment beyond credibility), it is arguable that the potential for unfairness is at least as great for the civil litigant who has no control over the use of a criminal conviction. Indeed, it is not beyond imagination that a party might compel the testimony of an adverse party, who might have little to contribute to the resolution of factual issues, primarily, if not solely, for the opportunity to bring a criminal conviction to the jury’s attention.
Rule 609 of the Federal Rules of Evidence generally permits in a civil case “attacking a witness’s character for truthfulness by evidence of a criminal conviction” for a crime punishable by death or by imprisonment for more than one year, or any crime, regardless of punishment, if “establishing the elements of the crime required proving — or the witness’s admitting — a dishonest act or false statement.” (See Fed Rules Evid rule 609 [a] [1] [A]; [a] [2].) If, however, “more than 10 years have passed since the witness’s conviction or release from confinement for it, whichever is later,” evidence of the conviction is admissible only if “its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect,” and the proponent “gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.” (See Fed Rules Evid rule 609 [b].)
The federal rule is more restrictive generally for admission in a criminal case of felony convictions not involving a dishonest act or false statement, requiring in all cases that the probative value outweigh prejudicial effect (see Fed Rules Evid rule 609 *324 [a] [1] [B]); and the rule makes specific provision for the effect of a pardon, annulment, or certificate of rehabilitation (see Fed Rules Evid rule 609 [c]), juvenile adjudications (see Fed Rules Evid rule 609 [d]), and pendency of an appeal (see Fed Rules Evid rule 609 [e]).
The Court of Appeals has “declined to prescribe fixed rules prohibiting or allowing the use for credibility purposes of prior offenses based solely upon the potentially inflammatory impact of the crime or the victim involved, even in the sensitive area of sex offenses.” (See People v Bennette, 56 NY2d 142, 147 [1982].) In People v Bennette, the defendant had been convicted of a sex offense involving a child who was eight years old. “The defendant’s conviction for sodomy was not irrelevant to the question of his veracity.” (Id. at 148.) “A person ruthless enough to sexually exploit a child may well disregard an oath and resort to perjury if he perceives that to be in his self-interest.” (Id.) The probative value of the conviction “was not diminished by the passage of time”; the incident was not “buried deep in the defendant’s past,” but rather was a “recent conviction” for which the defendant was still on parole at the time of trial. (See id.)
As an alternative to precluding all use of a criminal conviction for impeachment, the trial court might adopt a “Sandoval compromise” (see People v Brown, 101 AD3d 895, 896 [2d Dept 2012]), i.e., “limit inquiry to the mere fact that there has been a prior conviction; . . . limit inquiry to the existence and nature of the prior conviction; or . . . permit examination into the facts and circumstances underlying the prior conviction.” (See People v Hayes, 97 NY2d 203, 208 [2002]; People v Townsend, 70 AD3d 982, 982 [2d Dept 2010]; People v Carrasquillo, 204 AD2d 735, 735 [2d Dept 1994].) A Sandoval compromise may be particularly appropriate where the conviction is “remote” in time (see People v Thompson, 99 AD3d 819, 819 [2d Dept 2012]), or in the “sensitive area of sex offenses” (see People v Hayes, 97 NY2d at 208; People v Bennette, 56 NY2d at 148-149; People v Cardona, 60 AD3d 493, 494 [1st Dept 2009]; People v Rodriguez, 21 AD3d 1400, 1401 [4th Dept 2005]).
Conviction for a sex offense has been a permitted basis for impeachment in many cases, often with a “Sandoval compromise.” (See People v Hayes, 97 NY2d at 208 [sexual abuse in the first degree/aggravated criminal sexual assault]; People v Cardona, 60 AD3d at 494 [sexual abuse]; People v Little, 24 AD3d 1244, 1246 [4th Dept 2005] [misdemeanor sexual abuse]; People *325 v Rodriguez, 21 AD3d at 1401 [sexual abuse]; People v Brown, 16 AD3d 1102, 1103 [4th Dept 2005] [sexual abuse in the first degree]; People v Johnson, 283 AD2d 331 [1st Dept 2001] [rape]; People v Kelly, 270 AD2d 511, 513-514 [3d Dept 2000] [sexual abuse in the first degree]; People v Naylor, 196 AD2d 320, 322-323 [3d Dept 1994] [rape]; People v Moise, 199 AD2d 423, 423-424 [2d Dept 1993] [rape].)
“[T]here are no per se rules requiring preclusion because of the age, nature and number of a defendant’s prior crimes.” (People v Walker, 83 NY2d 455, 459 [1994].) “That prior convictions [are] remote in time [does] not automatically bar cross-examination of the defendant with respect thereto” (see People v White, 60 AD3d 1095, 1096 [2d Dept 2009]); indeed, the defendant may have “spent many of the intervening years in prison” (see People v Jamison, 278 AD2d 100, 101 [1st Dept 2000]).
In numerous decisions, appellate courts have permitted the use of criminal convictions although more than 10 years, and as many as 20 years, before the trial, in most cases not specifying the nature of the conviction. (See People v Haugh, 84 AD3d 1401, 1401 [2d Dept 2011] [10 years]; People v Townsend, 70 AD3d 982, 982 [2d Dept 2010] [“approximately 20 years old”]; People v McClain, 61 AD3d 703, 704 [2d Dept 2009] [14 years]; People v Fotiou, 39 AD3d 877, 878 [2d Dept 2007] [“about 10 to 20 years old”]; People v Myron, 28 AD3d 681, 683 [2d Dept 2006] [“more than 20 years old”]; People v Caldwell, 23 AD3d 576, 576 [2d Dept 2005] [“more than 10 years old”]; People v Springer, 13 AD3d 657, 658 [2d Dept 2004] [“more than 16 years old”]; People v Turner, 239 AD2d 447, 447-448 [2d Dept 1997] [“15 years ago”; gun possession]; People v Carrasquillo, 204 AD2d 735, 735 [2d Dept 1994] [“over 10 years old”].)
In People v Caviness (38 NY2d 227 [1975]), the Court of Appeals reversed a conviction for manslaughter, finding “highly prejudicial” error in the use of a 22-year-old conviction for gun possession to impeach the defendant (see id. at 233). “The 1951 conviction had little, if any, logical bearing on defendant’s credibility at the 1973 trial.” (See id.)
Use for impeachment purposes of sex crimes has been permitted when the conviction was “over 10 years old” (see People v Naylor, 196 AD2d at 322-323); and when the conviction was “approximately 14 years old” (see People v Moise, 199 AD2d at 423-424); in each case the conviction was for rape. But in People v Shields (58 AD2d 94 [2d Dept 1977], affd 46 NY2d 764 [1978]), the trial court’s allowance of use of a conviction of assault with *326 intent to rape, “one month short of 10 years of age,” was deemed “an improvident exercise of discretion which under other and ordinary circumstances might mandate reversal” (see 58 AD2d at 98).
At oral argument on defendant Olaskowitz’s motion, plaintiffs counsel argued that, in considering whether defendant’s sex crime convictions are too remote for impeachment, the court should consider the provisions of the Sex Offender Registration Act (see Correction Law § 168 et seq.), also known as “Megan’s Law,” “which implements a registration and notification system for individuals convicted of certain sex offenses based on a three-tier classification system” (see People v Brown, 302 AD2d 919, 920 [4th Dept 2003]). The act was effective on January 1, 1996, and has been held constitutional as applied to persons convicted of sex crimes prior to its date. (See id. at 921; Matter of S.V. v Calabrese, 246 AD2d 655, 655 [2d Dept 1998].)
As described above, on January 15, 1988, defendant Olaskowitz was convicted on multiple charges under Penal Law §§ 130.40 and 130.45, but those convictions were reversed on June 26, 1990, after which, on August 13, 1990, defendant pleaded guilty to one count under Penal Law § 130.40 and two counts under Penal Law § 130.45. He had previously, on January 22, 1988, pleaded guilty to a single count under Penal Law § 130.40. For purposes of this motion, the court considers that, in January 1988, defendant was convicted of two counts each under Penal Law §§ 130.40 and 130.45. He was released from prison in 1993.
There is no evidence in the record on this motion as to defendant’s status under the Sex Offender Registration Act, and the court will not speculate. Two general points, however, are worthy of note. First, unless the “sex offender” has been designated a “sexual predator,” a “sexually violent offender,” or a “predicate sex offender” — terms defined in the statute (see Correction Law § 168-a [1], [7]), if the offender is “classified as a level one risk, or . . . has not yet received a risk level classification,” the duration of the registration and verification requirements of the act is 20 years from the initial date of registration. (See Correction Law § 168-h [1].) Otherwise, the duration is for life, subject to provision for being relieved of the duty to register and verify. (See Correction Law § 168-h [2].)
Second, the act is based upon a legislative finding as to the “danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts character *327 ized by repetitive and compulsive behavior” (see L 1995, ch 192, § 1). As noted above, generally “crimes or conduct occasioned by addiction or uncontrollable habit. . . may have lesser probative value as to lack of in-court veracity.” (See People v Sandoval, 34 NY2d at 377; see also People v Bennette, 56 NY2d at 148 [“impulsive or uncontrollable act”]; People v Shields, 58 AD2d at 98 [“act of impulsive violence”].)
Again, we know nothing of defendant Olaskowitz’s status under the act. Nor does the record show that, since the first part of 1986 when the offenses were committed on which his convictions were based — now 27 years ago — he has even been charged with similar behavior. Notwithstanding his incarceration for six years, that is yet more than two decades.
Under Sandoval (34 NY2d 371), “it is the defendant who has the burden ‘of demonstrating that the prejudicial effect of the admission of evidence [of prior convictions and misconduct] for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion’.” (See People v Grant, 7 NY3d at 425, quoting Sandoval, 34 NY2d at 378.) The case law on the civil side does not explicitly address the issue, but, particularly in light of CPLR 4513, the party who is resisting use of a criminal conviction for impeachment should bear the burden of convincing the trial court to exercise its discretion in favor of preclusion or limitation. The interest of the proponent of the use of a conviction is, of course, not to be ignored, and the court must weigh “the importance of [the party’s] credibility as well as the importance of [the party’s] presence on the witness stand” (see People v Hayes, 97 NY2d at 208; see also Davis v McCullough, 37 AD3d at 1122 [“witness offered no relevant testimony . . . and thus his credibility was not at issue”]; People v Kelly, 270 AD2d at 513 [“defendant’s credibility was to be a main issue at trial”]).
There is no question but that defendant Olaskowitz’s two convictions under Penal Law § 130.40 and two convictions under Penal Law § 130.45 would be relevant to his credibility at trial. As will appear, however, the crimes pleaded to, as well as those charged, relate to unforced sexual contact, albeit with persons incapable of consent. One of the convictions was clearly for violation of section 130.40 (1), i.e., “oral sexual conduct or anal sexual conduct with a person who is incapable of consent by reason of some factor other than being less than seventeen years old,” but the record does not indicate what that factor might *328 be. Another conviction under section 130.40 does not specify whether the plea was to a crime of the just-quoted subdivision (1), or to the crime described in subdivision (2), i.e., “oral sexual conduct or anal sexual conduct with a person less than seventeen years old.” Defendant Olaskowitz was convicted of both at trial, and the First Department decision reversing the convictions describes “boys under the age of 17 . . . supplied with drugs, alcohol, money and other gifts to induce them to engage in sexual acts” (see People v Olaskowitz, 162 AD2d at 322). The certificate of disposition for the two convictions under section 130.45 does not indicate any subdivision(s), but the crime relates to oral or anal sexual conduct either with a person less than 15 years old (see § 130.45 [1]) or a person “who is incapable of consent by reason of being mentally disabled or mentally incapacitated” (see § 130.45 [2]). There is nothing in the First Department decision or anything else in the record that would suggest the latter.
This court’s research has not revealed any appellate decision that has permitted the use of a criminal conviction, for any crime, where the conviction was 25 years old or where the party convicted had been released from incarceration 20 years before. The probative value as to credibility under such circumstances is substantially diminished for the purpose of balancing against the potential for prejudice. Here, in light of recent and highly publicized allegations of sexual abuse of both underage boys and girls, and heated controversy concerning the response of law enforcement authorities, conviction of sexual contact with a minor, even if not forcible, would likely be highly inflammatory.
This action arises from the collapse of a masonry wall dividing two parcels of real property, one owned by defendant Olaskowitz. A dispositive issue in the case is whether the wall that allegedly collapsed on plaintiff Stanford Tripp was located entirely on the property owned by former defendants John Williams and Ear line Barrett, as is contended by defendant Olaskowitz and supported by a survey, or whether the wall is located at least in part on the property owned by Mr. Olaskowitz, as is contended by plaintiff and supported by another survey. Mr. Olaskowitz’s testimony, and, therefore, his credibility, is of very limited materiality on this issue.
Assuming the jury should find that the wall is located at least in part on Mr. Olaskowitz’s property, his testimony as to the condition of the wall, and its maintenance and repair, if any, certainly becomes material. But the jury will hardly be required *329 to rely on his testimony and, therefore, his credibility on those issues. Former codefendants John Williams and Earline Barrett, the owners of the adjacent property, could presumably testify on those issues. Indeed, plaintiff had worked for Mr. Williams for 20 years before the occurrence, and had been living in Mr. Olaskowitz’s house for some months before the day he was allegedly injured.
Weighing the probative value of the defendant Olaskowitz’s convictions, substantially dissipated by the long passage of time, against the possibility of prejudice inherent in the nature of the crimes and exacerbated by recent public attention and controversy as to such crimes, the court concludes that the use of the convictions for impeachment of Mr. Olaskowitz should be precluded. The court has considered the possibility of a “Sandoval compromise,” but concludes that any mention of the crimes would, almost necessarily, engender testimony about the underlying facts, which, at the least, would unduly distract the jury from the factual issues it will be called upon to decide.
The circumstances here may be rather exceptional, but it is the exceptional case that often sharpens our focus and understanding about the law.
Defendant’s motion to preclude is, therefore, granted.