**SUPREME COURT OF THE STATE OF NEW YORK**
*Appellate Division, Fourth Judicial Department*

**587**
**CA 11-02517**
PRESENT: SMITH, J.P., FAHEY, PERADOTTO, AND LINDLEY, JJ.

---

HUGO RAFAEL RAMIREZ GABRIEL, ALSO KNOWN AS
CESAR MENDEZ, ET AL.,
PLAINTIFFS-APPELLANTS-RESPONDENTS,

                    V                              OPINION AND ORDER

JOHNSTON'S L.P. GAS SERVICE, INC.,
DEFENDANT-RESPONDENT-APPELLANT,
ET AL., DEFENDANTS.
(ACTION NO. 1.)

-----------------------------------------------

HUGO RAFAEL RAMIREZ GABRIEL, ALSO KNOWN AS
CESAR MENDEZ, ET AL., PLAINTIFFS-APPELLANTS,

                    V

ANTHONY A. DEMARCO, ANTHONY W. DEMARCO, ANTHONY
DEMARCO & SONS, INC., DEFENDANTS-RESPONDENTS,
ET AL., DEFENDANTS.
(ACTION NO. 2.)

-----------------------------------------------

HUGO RAFAEL RAMIREZ GABRIEL, ALSO KNOWN AS
CESAR MENDEZ, ET AL.,
PLAINTIFFS-APPELLANTS-RESPONDENTS,

                    V

RAYTHEON COMPANY, DEFENDANT-RESPONDENT-APPELLANT.
(ACTION NO. 3.)

---

MICHAELS & SMOLAK, P.C., AUBURN (MICHAEL G. BERSANI OF COUNSEL), FOR
PLAINTIFFS-APPELLANTS-RESPONDENTS AND PLAINTIFFS-APPELLANTS.

COSTELLO, COONEY & FEARON, PLLC, SYRACUSE (DONALD S. DIBENEDETTO OF
COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT JOHNSTON'S L.P. GAS
SERVICE, INC.

LAW OFFICE OF FRANCIS E. MALONEY, JR., SYRACUSE (FRANCIS E. MALONEY,
JR., OF COUNSEL), FOR DEFENDANT-RESPONDENT ANTHONY A. DEMARCO.

BOND, SCHOENECK & KING, PLLC, OSWEGO (SCOTT J. DELCONTE OF COUNSEL),
FOR DEFENDANT-RESPONDENT-APPELLANT RAYTHEON COMPANY.

DAVIDSON & O'MARA, P.C., ELMIRA (THOMAS F. O'MARA OF COUNSEL), FOR
DEFENDANT-RESPONDENT ANTHONY DEMARCO & SONS, INC.

---------------------------------------------------------------------------------------------------------

Appeal and cross appeals from an order of the Supreme Court,
Oswego County (James W. McCarthy, J.), entered August 5, 2011 in a
personal injury action. The order, inter alia, denied those parts of
plaintiffs' motion for a protective order relating to the taking of
certain depositions and trial testimony via video and denied, without
prejudice, the cross motions of defendants Raytheon Company and
Johnston's L.P. Gas Service, Inc. for dismissal of the claims of the
majority of plaintiffs against them.

It is hereby ORDERED that the order so appealed from is
unanimously modified on the law by vacating that part of the third
ordering paragraph concerning the depositions of plaintiffs and
granting those parts of plaintiffs' motion for a protective order
permitting the undeposed plaintiffs who have returned to Guatemala to
be deposed in Guatemala via video conference and permitting the
plaintiffs who have returned to Mexico and Guatemala to testify at
trial by video and as modified the order is affirmed without costs.

Opinion by FAHEY, J.:

I

The primary issue on this appeal is whether Supreme Court erred
in denying those parts of plaintiffs' motion for a protective order
permitting certain plaintiffs who have not been deposed and have left
the United States for Guatemala to be deposed in Guatemala via video
conference and allowing those plaintiffs who have left the United
States for either Mexico or Guatemala to testify at trial by video.
We conclude that the court abused its discretion in denying those
parts of plaintiffs' motion with respect to both the depositions and
the trial testimony.

II

These consolidated actions had their genesis in an October 6,
2005 propane gas explosion at a farm camp in Schroeppel, New York that
killed one migrant worker and injured nine others. Plaintiffs are the
nine injured workers, six of whom are citizens of Guatemala and three
of whom are citizens of Mexico. All plaintiffs were in the United
States as illegal, undocumented farm workers at the time of the
explosion, and they were employed by defendant Anthony DeMarco & Sons,
Inc. (DeMarco, Inc.). Defendants Anthony A. DeMarco, Anthony W.
DeMarco and DeMarco, Inc. (collectively, DeMarco defendants) provided
living quarters for plaintiffs and owned the building where the
explosion occurred. Defendant Raytheon Company (Raytheon) allegedly
manufactured a stove involved in the explosion, and defendant
Johnston's L.P. Gas Service, Inc. (Johnston) allegedly filled some
propane tanks at the explosion site.

After the explosion, plaintiffs commenced these actions seeking

damages for injuries they sustained in that accident, and the matter proceeded to the point that seven of the nine plaintiffs had been deposed by all defendants.  Plaintiff Hugo Rafael Ramirez Gabriel, also known as Cesar Mendez (Mendez), had been deposed only by Johnston, and plaintiff Lucio Jimenez Gabriel, also known as Marco Antonio Jimenez (Gabriel), remained undeposed.

The foregoing depositions followed a round of discovery motion practice undertaken by plaintiffs and designed to compel completion of the depositions and medical examinations of plaintiffs by November 2008.  The impetus for that motion practice was obvious:  plaintiffs sought to go on record before leaving the United States, either voluntarily or otherwise.  By order entered August 8, 2008, the court directed that the depositions of the seven plaintiffs who then remained in the United States were to take place during the first two weeks of November 2008, and that any medical examinations of those plaintiffs undertaken on behalf of defendants were to occur by November 30, 2008, with the caveat that the examination of plaintiff Ledis Vasquez Lopez (Lopez) was to occur by November 17, 2008.  At that time, Mendez and Gabriel had returned to Guatemala, and Lopez had been granted a voluntary departure by the United States Immigration Court that required him to leave the country by November 19, 2008.

III

By February 2011, only three of the nine plaintiffs remained in the United States.  Five of the plaintiffs, i.e., Gabriel, Mendez, Lopez, Ernesto Diaz Vasquez (Vasquez) and Alvaro Reynoso Jimenez, also known as Rolando Perez (Jimenez), had returned to Guatemala, and one plaintiff, Vidal Zacarias Angel, also known as Jose Manuel Perez (Angel), had returned to Mexico.  The remaining three plaintiffs, Eusemo Bravo Lopez, also known as Hugo Roblero (Eusemo), Benai Salas Mejias, also known as Rogelio Gonzalez (Mejias), and Ediberto Ramirez Perez (Perez) remained in the United States.  Eusemo and Mejias, however, expected to leave the United States shortly, and only Perez planned to stay in the country indefinitely.

On February 15, 2011, plaintiffs moved, inter alia, for a protective order permitting those plaintiffs who had returned to Guatemala and had not been deposed by all defendants to be deposed via video conference.  Plaintiffs also sought a protective order permitting those plaintiffs who had returned to Mexico and Guatemala to have their trial testimony taken by video conference.  In support of the motion, plaintiffs' attorney in these actions explained the immigration status of each plaintiff, noted that plaintiffs would assume the cost of video conferencing and indicated that video conferencing was feasible in both Guatemala and Mexico.  Moreover, plaintiffs' immigration attorney submitted an affidavit in which she described her unsuccessful attempts to obtain visas for Gabriel and Mendez and explained that such applications were expensive—each application came with a $140 fee and resulted in $500 in transportation expenses—and arduous in view of the 16-hour round trip from the village in which those plaintiffs reside to the United States Embassy in Guatemala City.  The letters denying the visa applications

for Gabriel and Mendez submitted with the affidavit of plaintiffs'
immigration attorney establish that the subject applications were
denied because those plaintiffs were "foreigners who . . . remained
illegally in the United States for one year and then [sought] re-
admittance within the following 10 years from the date they left the
United States" and who had "[e]nter[ed] or [tried] to enter the United
States illegally after having been illegally present for a period of
more than one year."  Plaintiffs' immigration attorney further noted
that any visa applications made by the other plaintiffs would be
denied for the same reasons.

Raytheon responded by cross-moving for an order dismissing the
complaint with respect to Gabriel and Mendez in the event that they
did not appear in New York for depositions.  Raytheon also sought an
order dismissing the complaint with respect to those plaintiffs who
had left the country by that time, i.e., Gabriel, Mendez, Lopez,
Vasquez, Jimenez and Angel, in the event that "they will not be
present for the trial."  In support of its cross motion, Raytheon
contended that the taking of deposition testimony by video conference
was inappropriate because plaintiffs had not demonstrated that
appearing for depositions in New York would cause an undue hardship,
and because any hardship was self-imposed by virtue of plaintiffs'
illegal entry into the United States.  Raytheon alleged that it would
suffer prejudice from the taking of depositions by video and that such
prejudice included potential problems with technology, its ability to
evaluate witness credibility, language barriers, potential perjury,
witness identification and assessment of injuries.  Likewise, Raytheon
alleged that it would suffer prejudice from the use of videotaped
testimony at trial, contending that such evidence would impair the
jury's assessment of witness credibility and plaintiffs' injuries, and
would preclude defendants from calling plaintiffs as rebuttal
witnesses.

Similar to Raytheon, Johnston cross-moved for, inter alia, an
order compelling Gabriel and Mendez to appear for depositions and
providing that "any plaintiff . . . not present to testify . . . [at]
trial shall have [his] complaint dismissed."  In support of its cross
motion, Johnston contended that plaintiffs' inability to attend the
depositions and trial was a "consequence of their illegal activity"
and that defendants would be prejudiced by the taking of depositions
through video conference inasmuch as they would be deprived of "an
opportunity to conduct . . . in-person deposition[s]" of Gabriel and
Mendez.  With respect to the issue whether to permit the use of video
testimony at trial, Johnston contended that it would be a "logistical
nightmare" to orchestrate such testimony and that such testimony could
impede Johnston's ability to establish "grave" injuries, a required
element of Johnston's claims against plaintiffs' employer, DeMarco,
Inc. (*see generally* Workers' Compensation Law § 11).

The DeMarco defendants opposed plaintiffs' motion by way of an
affidavit in which their attorney contended that plaintiffs should not
be permitted to testify at trial by video conference because such
practice is unauthorized by case law and because of the difficulty of
locating an interpreter and enforcing the witness oaths.  On the issue

whether depositions should be conducted by video conference, the attorney for the DeMarco defendants contended that plaintiffs "failed to show that hardship exists," and he suggested that plaintiffs' absence was "largely self-imposed" and related to plaintiffs' conduct.

In reply, plaintiffs' attorney attempted to explain the circumstances giving rise to the decision of most of the plaintiffs to return to Central America. In sum and substance, plaintiffs have on average a third-grade education, speak very little English and generally left the United States as a direct result of the medical and financial hardships imposed by the accident. By the time plaintiffs tendered their reply, Eusemo was subject to a fate similar to that of Lopez inasmuch as Eusemo had been ordered by the United States Immigration Court to leave the United States by August 31, 2011.

The exhibits attached to the reply affirmation of plaintiffs' attorney consist in part of excerpts from the depositions of those plaintiffs who were deposed, which establish that those plaintiffs are ill-educated, illegal migrant workers from Central America and have families there. The subject exhibits also included the affidavits of Jimenez, Vasquez and Angel establishing that each of those plaintiffs had been severely injured in the accident, expected to receive workers' compensation settlements and sought to return to families that they had not seen in several years given their uninterrupted presence in the United States.

An affidavit of Lopez also annexed to the reply affidavit of plaintiffs' attorney established that Lopez, too, was seriously injured and separated from his family for many years given his continued presence in this country, but unlike the other affiants, he had been ordered to leave the United States by November 2008. In his affidavit, Mejias averred that he intended to return to Mexico to live more frugally on his workers' compensation settlement, and that he could neither work nor qualify for public assistance in the United States. Mejias, who was rendered a paraplegic as a result of the explosion, also indicated that he would be cared for by his family in Mexico and that he thought it unlikely that he would be granted a visa to re-enter the United States for trial given his uninterrupted presence here since at least the date of the accident. Plaintiffs' immigration attorney did not consider Mejias's case in the affidavit she offered in reply to the cross motions, but she noted therein that her requests for visa waivers for Gabriel and Mendez had been denied by the United States Embassy in Guatemala.

After receiving reply papers from Johnston and Raytheon reiterating their contentions that plaintiffs' hardship was of their own making and that those defendants would be prejudiced to the extent that the court permitted plaintiffs to testify by video, the court issued an order characterizing this matter as one "in which each of the plaintiffs for whom the protective order is sought entered the United States illegally and left the United States voluntarily, and who are presumptively unable to return to the United States as a result of their illegal initial entry." "Balancing the equities presented," the court set a trial date and, in the third ordering

paragraph, directed "[t]hat plaintiffs must return to the United States for depositions and independent medical examinations, if requested by defendants . . . [60] days prior to trial."  The court also denied the cross motions without prejudice.  Plaintiffs appeal, and Raytheon and Johnston cross-appeal.

IV

We begin with plaintiffs' appeal and note at the outset that plaintiffs have abandoned any contention with respect to the issue whether those plaintiffs who have left the United States must return to this country for medical examinations within 60 days of trial (*see Ciesinski v Town of Aurora*, 202 AD2d 984, 984).  We also note what we perceive to be the nature of plaintiffs' contentions on appeal.  At this point, only two plaintiffs—Gabriel and Mendez—have yet to be fully deposed.  In our view, plaintiffs contend on appeal that the court should have permitted video depositions of all plaintiffs, i.e., initial depositions of Gabriel and Mendez and second video depositions of all plaintiffs to be used at trial.

A

We now turn to the merits and consider first the question whether the court should have permitted plaintiffs to give deposition testimony from Mexico and Guatemala.  "As a general rule, a non-resident plaintiff who has invoked the jurisdiction of New York State by bringing suit in its courts must stand ready to be deposed in New York unless it is shown that undue hardship would result" (*Farrakhan v N.Y.P. Holdings*, 226 AD2d 133, 135-136; *see Gartner v Unified Windows, Doors & Siding, Inc.*, 68 AD3d 815, 815; *Rodriguez v Infinity Ins. Co.*, 283 AD2d 969, 970).  Nevertheless,

> "[t]he court may at any time on its own initiative, or on motion of any party or of any person from whom discovery is sought, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts" (CPLR 3103 [a]).

Put differently, upon a showing of undue hardship, a court has the authority to issue a protective order requiring that a party's deposition be conducted outside of the country where the action was commenced (*see Doherty v City of New York*, 24 AD3d 275, 275-276; *Rogovin v Rogovin*, 3 AD3d 352, 353), and it may direct that a deposition must be conducted in a foreign country (*see Gartner*, 68 AD3d at 815-816; *Hoffman v Kraus*, 260 AD2d 435, 437).

We conclude that the court abused its discretion in denying that part of plaintiffs' motion for a protective order pursuant to CPLR 3103 (a) directing that the depositions of Gabriel and Mendez be

conducted by video conference (*see Yu Hui Chen v Chen Li Zhi*, 81 AD3d 818, 819; *Gartner*, 68 AD3d at 815-816; *Rogovin*, 3 AD3d at 353; *see generally Wygocki v Milford Plaza Hotel*, 38 AD3d 237, 237-238; *Hoffman*, 260 AD2d at 437). *Yu Hui Chen* is instructive. There, the Second Department reversed that part of an order denying the plaintiff's cross motion for a protective order pursuant to CPLR 3103 (a) directing that his deposition be conducted by remote electronic means. The Court stated that, "[w]hile depositions of parties to an action are generally held in the county where the action is pending . . ., if a party demonstrates that conducting his or her deposition in that county would cause undue hardship, the Supreme Court can order the deposition to be held elsewhere" (*Yu Hui Chen*, 81 AD3d at 818). The Court also concluded that the plaintiff therein "demonstrated that traveling from China to the United States for his deposition would cause undue hardship" (*id.* at 819).

Johnston minimizes the relevance of *Yu Hui Chen* in its respondent's brief by noting that "[n]o facts are provided" in the memorandum determining that case. Our review of the record in *Yu Hui Chen*, however, reveals that the plaintiff was injured in a workplace accident in April 2007 and commenced a Labor Law and common-law negligence action in July 2007 seeking damages for injuries he sustained in that accident. In approximately February 2008, the plaintiff was arrested by United States Immigration and Customs Enforcement officers and, from the time of his arrest, was detained at a government facility and precluded from testifying at either his Workers' Compensation Board hearing or at a deposition.

Without the knowledge of his attorney, the plaintiff in *Yu Hui Chen* was subsequently deported, apparently to China. After research and consultation with attorneys who practiced immigration law in both New York and China, the plaintiff's attorney reached the conclusion that to have the plaintiff return to the United States in the near future would be overly burdensome and at great financial cost, if not almost impossible. The plaintiff's attorney also noted that the deportation of plaintiff would preclude him from obtaining a visa to enter the United States until after 10 years from his date of departure. Moreover, the plaintiff submitted an affidavit confirming his deportation and indicating that he attempted to secure another visa to enter the United States to participate in a deposition but was told by attorneys in China that he could not do so. The plaintiff added that he could not anticipate when he would be able to return, but he knew that it would be difficult and beyond his financial means at that time.

The financial and legal impediments that the plaintiffs who are abroad in this case face in returning to this country are strikingly similar to those at issue in *Yu Hui Chen*. Plaintiffs are all impoverished laborers and, except for Perez and potentially Eusemo and Mejias, are either absolutely or likely without means of obtaining a visa to re-enter the country. Here, many plaintiffs left the United States for practical reasons, i.e., the desire to preserve the workers' compensation settlements that supported their existence and to visit family they had not seen in years. Such departures, however,

are hardly voluntary, and there is no indication that any plaintiff left to avoid examination before or at trial.

The cases on which defendants primarily rely, i.e., *Rodriguez v Infinity Ins. Co.* and *Bristol-Myers Squibb Co. v Yen-Shang B. Chen* ([appeal No. 2] 186 AD2d 999), do not compel a different result. In *Rodriguez* (283 AD2d at 970), the plaintiffs were seasonal farm workers from Mexico, and we determined that the "conclusory allegations of hardship" contained in an attorney affidavit failed to establish that the plaintiffs would suffer an undue hardship in coming to New York for depositions. Here, by contrast, the explanation of plaintiffs' hardship in returning to the United States was comprehensive. *Bristol-Myers Squibb Co.* ([appeal No. 2] 186 AD2d 999) involved a Taiwanese national who unsuccessfully sought to avoid appearing in Syracuse for a deposition on the ground that the 12,000-mile journey from Taiwan to Syracuse was unnecessary, inconvenient and expensive. We concluded that the defendant's burden was self-imposed because the defendant *chose* to travel back to Taiwan from Canada after receiving a deposition notice (*id.*), and *Bristol-Myers Squibb Co.* is distinguishable inasmuch as the plaintiffs in this matter neither had the financial means to remain in this country nor have the ability to return.

B

We next turn to the issue whether the testimony given at the depositions of plaintiffs taken abroad may be used at trial. Our review of that question begins with CPLR 3117 (a) (3), which provides in relevant part that

> "the deposition of any person may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition or who had the notice required under these rules, provided the court finds:
>
> . . .
>
> (iv) that the party offering the deposition has been unable to procure the attendance of the witness by diligent efforts; or
>
> (v) upon motion or notice, that such exceptional circumstances exist as to make its use desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court . . . ."

The determination whether to permit a party to introduce his or her own deposition into evidence at trial rests within the discretion of the court and "is reviewable only for 'clear abuse' " (*Dailey v Keith*, 306 AD2d 815, 815, *affd* 1 NY3d 586, quoting *Feldsberg v Nitschke*, 49 NY2d 636, 643, *rearg denied* 50 NY2d 1059; *see American Bank Note Corp. v Daniele*, 81 AD3d 500, 501). Taking into account

" 'the law's preference for oral testimony in open court' " (*Dailey*, 306 AD2d at 815, quoting Siegel, NY Prac § 358, at 587 [3d ed]), as well as all of the relevant facts and circumstances, we conclude that there was such an abuse of discretion here.

We further conclude that plaintiffs met the criteria set forth in CPLR 3117 (a) (3) (iv), i.e., that plaintiffs appear unable to attend the trial despite diligent efforts. Although only Gabriel and Mendez, i.e., the two plaintiffs who have not been fully deposed, sought and failed to obtain visas to enter the United States, the reasons underpinning the denial of the visa applications of those plaintiffs are equally germane to what would be the futile visa applications of the other plaintiffs who have left the United States. Vasquez, Jimenez, Lopez, Angel and Mejias have indicated that they have been in the United States illegally for several years. Eusemo, although not explicit about the length of his illegal stay, established that he had been ordered to leave the United States. In view of that evidence, it is extraordinarily unlikely that those plaintiffs will obtain visas, and there is little sense in those impoverished plaintiffs engaging in a futile and, by their standards, onerously expensive visa application process (*see generally Yu Hui Chen*, 81 AD3d at 818-819).

We also conclude that plaintiffs met the criteria set forth in CPLR 3117 (a) (3) (v), i.e., that exceptional circumstances exist that make the use of plaintiffs' depositions in their case-in-chief at trial desirable. Plaintiffs are all impoverished migrant workers who were severely injured in the accident. Except for Perez, and potentially Eusemo and Mejias, each plaintiff has left the country with no reasonable hope of returning for trial. On the face of this record, the absence of plaintiffs has nothing to do with evading confrontation by defendants. Rather, Lopez was expelled from the country, and the remaining plaintiffs, except for Perez and potentially Eusemo and Mejias, left to preserve their workers' compensation settlements and reunite with the families they had not seen in years.

Moreover, the equities with respect to this issue weigh in plaintiffs' favor. Under these circumstances, to deprive plaintiffs of the opportunity to testify at trial via video would be tantamount to depriving them of their day in court. To the extent that plaintiffs such as those in this case are precluded from testifying, it could inhibit their ability to pursue legitimate personal injury claims in cases such as this one.

Additionally, the use of videotaped testimony at trial is not unheard of. To the extent that plaintiffs engage in a second round of videotaped depositions, defendants' concerns regarding their right to confront the witnesses against them and their ability to effectively cross-examine those witnesses would be rendered moot. Moreover, contrary to the contention of the DeMarco defendants, plaintiffs' videotaped testimony will not provide the only means of addressing the grave injury issue in this case. With the exception of Mejias, whose paraplegia constitutes a grave injury pursuant to Workers' Compensation Law § 11, the issue whether any of the remaining

plaintiffs sustained a grave injury appears to turn on the question whether the facial scarring those plaintiffs sustained is "severe" within the meaning of that statute. The standard for determining whether a facial disfigurement is "severe" is whether "a reasonable person viewing the plaintiff's face in its altered state would regard the condition as abhorrently distressing, highly objectionable, shocking or extremely unsightly" (*Fleming v Graham*, 10 NY3d 296, 301), and there is no reason why defendants cannot address that issue through the photographic evidence appearing in the record.

C

Contrary to the contention of Johnston and Raytheon, our determination is consistent with sound public policy. "An alien unauthorized for employment in the United States is not barred from seeking to recover . . . in a personal injury action" (*Piedrahita v RGF Dev. Corp.*, 38 AD3d 741), and *Balbuena v IDR Realty LLC* (6 NY3d 338) is instructive on this point. In *Balbuena* (6 NY3d at 359, quoting *Rosa v Partners in Progress, Inc.*, 152 NH 6, 13, 868 A2d 994, 1000), the Court of Appeals noted that, "in order to further the laudable purposes of [the federal Immigration Reform and Control Act of 1986 (8 USC § 1324a *et seq.*)] and [the state] Labor Law, 'tort deterrence principles provide a compelling reason to allow an award of such damages against a person responsible for an illegal alien's employment when that person knew or should have known of that illegal alien's status . . . .' " The Court in *Balbuena* further noted that a different conclusion would have "diminish[ed] the protections afforded by the Labor Law [and] improvidently reward[ed] employers who knowingly disregard the employment verification system in defiance of the primary purposes of federal immigration laws" (*id.*). Moreover, the *Balbuena* Court recognized the plaintiffs' unauthorized presence in this country, but it found such "transgression . . . insufficient to justify denying [them] a portion of the damages to which they [were] otherwise entitled" (*id.* at 361).

Applying the principles of *Balbuena* here, we conclude that, as a general matter, allowing plaintiffs to testify from Mexico and Guatemala via video is generally consistent with sound public policy. To hold otherwise would undercut tort deterrence principles and *encourage* the employment of aliens not lawfully present in the United States. In so concluding, however, we note that defendants did not raise the issue whether the use of "fake" documents by Lopez and a false social security number by Mendez to obtain work in this country precludes recovery by those plaintiffs (*see generally Hoffman Plastic Compounds, Inc. v National Labor Relations Bd.*, 535 US 137, 148-151; *Balbuena*, 6 NY3d at 354-355). Our inquiry is limited to whether the public interest is served by allowing illegal aliens who voluntarily left the country and who are or appear to be precluded from returning may testify at a deposition or at a trial from a foreign country via video.

V

     We now turn to the cross appeals of Raytheon and Johnston, which raise the issue whether the court erred in denying their respective cross motions seeking, inter alia, dismissal of the claims of the majority of the plaintiffs in the actions against them.  Pursuant to 22 NYCRR 202.27 (b), a court has the discretion to dismiss the complaint in the event of a plaintiff's failure to appear (*see Harris v Bliss*, 60 AD3d 437, 438), but here the issue is academic in view of our determination that the court abused its discretion in denying those parts of plaintiffs' motion for a protective order relating to the taking of certain depositions and trial testimony via video.  In any event, dismissal of the claims of those plaintiffs not presently in the United States is unwarranted at this juncture.  Those plaintiffs have yet to default, and the issue thus is not ripe for our review (*see generally Murad v Russo*, 74 AD3d 1823, 1824, *lv dismissed* 16 NY3d 732).

                                    VI

     Accordingly, we conclude that the order should be modified by vacating that part of the third ordering paragraph concerning the depositions of plaintiffs and granting those parts of plaintiffs' motion for a protective order permitting the undeposed plaintiffs who have returned to Guatemala, i.e., Gabriel and Mendez, to be deposed in Guatemala via video conference and permitting those plaintiffs who have returned to Mexico and Guatemala to testify at trial by video.

Entered:  June 15, 2012                          Frances E. Cafarell
                                                 Clerk of the Court