Mujica v Nassau County Corr. Facility (2024 NY Slip Op 05216)

Mujica v Nassau County Corr. Facility

2024 NY Slip Op 05216

Decided on October 23, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 23, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
PAUL WOOTEN
WILLIAM G. FORD
LOURDES M. VENTURA, JJ.

2020-04918
 (Index No. 9847/14)

[*1]Mario Mujica, respondent, 
v
Nassau County Correctional Facility, et al., appellants.

Thomas A. Adams, County Attorney, Mineola, NY (Robert F. Van der Waag and John J. Hanley of counsel), for appellants.
Levine & Gilbert, New York, NY (Richard A. Gilbert of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for battery, the defendants appeal from a judgment of the Supreme Court, Nassau County (Antonio I. Brandeveen, J.), entered March 4, 2020. The judgment, upon a jury verdict in favor of the plaintiff on the cause of action alleging battery and awarding him damages in the sums of $150,000 for past pain and suffering and $160,000 for future pain and suffering, is in favor of the plaintiff and against the defendant County of Nassau in the principal sum of $310,000.
ORDERED that the judgment is affirmed, with costs.
As a result of a plea agreement regarding drug-related charges, the Nassau County District Court sentenced the plaintiff to serve a term of incarceration. The plaintiff served his sentence at the defendant Nassau County Correctional Facility (hereinafter the facility). The defendant Nassau County Sheriff's Department (hereinafter the Sheriff's Department), a department of the defendant County of Nassau, operates the facility (see Nassau County Charter, art XX, §§ 2001, 2003). Following his release, the plaintiff, upon speaking with his criminal defense attorney, learned that the Sheriff's Department had inadvertently released him five days prior to the expiration of his term of incarceration. On October 28, 2013, the plaintiff voluntarily surrendered himself to the District Court and was thereafter transported to the facility to serve the remainder of his sentence. Upon arrival, while undergoing the facility's inmate intake process, the plaintiff was fingerprinted and directed to change into an orange prison jumpsuit, among other things. During this intake process, a group of correction officers used force on the plaintiff, sprayed his face with pepper spray, and placed him in handcuffs. In post-incident reports, the correction officers each claimed that they used force in response to the plaintiff's argumentative and combative behavior. The plaintiff, however, denied engaging in such behavior. Instead, he asserted that one of the correction officers insulted him and he responded with an insult of his own, prompting a group of officers to violently assault him.
Thereafter, the plaintiff commenced this action against, among others, the County and the Sheriff's Department to recover damages for injuries allegedly sustained in the incident. The matter ultimately proceeded to trial. After completing jury selection, the plaintiff moved for a unified trial on the issues of liability and damages, arguing, in effect, that evidence relating to [*2]damages was inextricably intertwined with the question of liability. The Supreme Court granted the plaintiff's motion, rejecting the defendants' contention that bifurcation was warranted. After the trial, the jury found in favor of the plaintiff on the cause of action alleging battery and awarded him damages in the sums of $150,000 for past pain and suffering and $160,000 for future pain and suffering over an eight-year period. A judgment was subsequently entered in the plaintiff's favor and against the County in the principal sum of $310,000. The defendants appeal.
"Trial courts are encouraged to conduct bifurcated trials in personal injury cases. However, where the nature of the plaintiff's injuries has an important bearing on the question of liability, a unified trial should be held" (Carbocci v Lake Grove Entertainment, LLC, 64 AD3d 531, 532 [citation omitted]). This standard may be satisfied "when the injuries are inextricably intertwined with the question of liability or when the injuries themselves are probative in determining how the incident occurred" (Castro v Malia Realty, LLC, 177 AD3d 58, 65). When "deciding whether to conduct a unified trial or a bifurcated trial, a court should," among other things, weigh the "probative value of [damages] evidence to the issue of liability and its centrality to the parties' dispute . . . against the degree to which the gravity of [the] injuries will likely engender sympathy for the plaintiff and thereby pose a risk of prejudice to the defendant" (Patino v County of Nassau, 124 AD3d 738, 740). However, "[t]he decision . . . rests within the discretion of the trial court, and should not be disturbed absent an improvident exercise of discretion" (id. at 739 [internal quotation marks omitted]).
Here, contrary to the defendants' contention, the plaintiff demonstrated that "[e]vidence relating to [his] injuries [was] probative in determining how the incident occurred" (Carbocci v Lake Grove Entertainment, LLC, 64 AD3d at 532). The Supreme Court therefore providently exercised its discretion in granting the plaintiff's motion for a unified trial on the issues of liability and damages (see id. at 532-533; Totaro v Scarlatos, 63 AD3d 1144, 1144-1145; Byrd v New York City Tr. Auth., 172 AD2d 579, 580-581; DeGregorio v Lutheran Med. Ctr., 142 AD2d 543, 544).
"[A] court may set aside a jury verdict and order a new trial where it finds that the verdict was contrary to the weight of the evidence" (Heller v City of New York, 218 AD3d 552, 553). "A jury verdict against a party may be set aside as contrary to the weight of the evidence only if the evidence so preponderated in favor of that party that the verdict could not have been reached on any fair interpretation of the evidence" (Avila v VVFJ Realty, LLC, 212 AD3d 699, 700 [alterations and internal quotation marks omitted]). "Where the verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view" (Lara v Arevalo, 205 AD3d 700, 702 [internal quotation marks omitted]). "The discretionary power to set aside a jury verdict and order a new trial must [therefore] be exercised with considerable caution" (Sweet v Hazan, 220 AD3d 666, 667 [alterations and internal quotation marks omitted]). "Whether a jury verdict should be set aside as contrary to the weight of the evidence does not involve a question of law, but rather requires a discretionary balancing of many factors. A court must not interfere with a jury's fact-finding process merely because it disagrees with its findings or would have evaluated the witnesses' credibility differently and reached a contrary determination. It is for the jury to make determinations as to the credibility of the witnesses, and great deference in this regard is accorded to the jury, which had the opportunity to see and hear the witnesses" (TJG Realty of Rockland, LLC v Con Serv Constr., Inc., 218 AD3d 713, 715 [citations and internal quotation marks omitted]). Moreover, "there is no preservation requirement for weight of the evidence review" (id. [internal quotation marks omitted]; see Evans v New York City Tr. Auth., 179 AD3d 105, 109-111).
Contrary to the defendants' contention, the jury verdict in favor of the plaintiff on the cause of action alleging battery was based on a fair interpretation of the evidence (see Acosta v City of New York, 153 AD3d 765, 766-767; Gill v City of New York, 146 AD3d 939, 941-942; Budimlic v New York City Hous. Auth., 200 AD2d 701, 701). The defendants contend that the jury verdict was "incomprehensible" because the correction officers each documented the altercation contemporaneously and provided consistent accounts, whereas the plaintiff's case was based primarily on his own testimony. However, the jury was not required to accept the correction [*3]officers' version of events simply because they each documented the incident or because they were consistent with one another. Further, the plaintiff relied not only on his own testimony but also on other evidence establishing the nature and extent of his injuries, which showed, among other things, that a broken rib he sustained was consistent with his claim that a correction officer kicked him in the ribs. "Although the [parties] presented conflicting testimony concerning material aspects of the altercation between" the plaintiff and the correction officers, "affording due deference to the jury's resolution of that conflict, we find no valid basis for disturbing the jury verdict in favor of the [plaintiff]" (Hall v Bouklis, 206 AD3d 800, 801).
Moreover, the defendants' contention that the Supreme Court improperly permitted the plaintiff's counsel to read the deposition testimony of certain correction officers during the plaintiff's case-in-chief is without merit. "CPLR 3117(a)(2) provides," in relevant part, "that the deposition testimony of a party or of any person who was a party when the testimony was given . . . may be used at trial for any purpose by any party who was adversely interested when the deposition testimony was given or who is adversely interested when the deposition testimony is offered in evidence. The statute [also] provides . . . that the use of a deposition is authorized only so far as admissible under the rules of evidence" (Rivera v New York City Tr. Auth., 54 AD3d 545, 547 [emphasis, alterations, and internal quotation marks omitted]). Contrary to the defendants' contention, the court did not commit error based on the mere fact that the defendants' counsel intended to and ultimately did produce those correction officers as witnesses on the defendants' case-in-chief (see Feldsberg v Nitschke, 49 NY2d 636, 645). Under the circumstances, the court providently exercised its discretion in permitting the plaintiff's counsel to read into the record the applicable "deposition testimony[,] which was admissible pursuant to CPLR 3117(a)(2)" (Fanek v City of Yonkers, 287 AD2d 683, 683; see Gregorian v New York Life Ins. Co., 211 AD3d 711, 714; cf. Novas v Zuckerman, 93 AD3d 585, 586).
Finally, the defendants' contention that the damages awards were excessive is without merit. Pursuant to CPLR 5501(c), "[t]he amount of damages to be awarded for personal injuries is a question for the jury, and the jury's determination is entitled to great deference. However, an award may be set aside if it deviates materially from what would be reasonable compensation" (Glynn v Altobelli, 181 AD3d 567, 570 [citations and internal quotation marks omitted]). "As the amount of an award for pain and suffering is a subjective determination that cannot be precisely quantified, whether there is a material deviation is determined by examining comparable cases. This analysis [also] requires consideration of factors such as the nature and extent of the injuries, the degree of past, present[,] and future pain[,] and the permanency of the injury" (Ciuffo v Mowery Constr., Inc., 107 AD3d 1195, 1197 [citations omitted]; see Petit v Archer, 218 AD3d 695, 696).
Here, considering the nature and the extent of the injuries sustained by the plaintiff, the awards for past pain and suffering and future pain and suffering did not deviate materially from what would be reasonable compensation in a manner that rendered them excessive (see Glynn v Altobelli, 181 AD3d at 567-570; Cardoza v City of New York, 139 AD3d 151, 154-159, 167-168; Nutley v New York City Tr. Auth., 79 AD3d 711, 711-712; Figueroa v City of New York, 78 AD3d 463, 463; Byrd v New York City Tr. Auth., 172 AD2d at 580-581; Schare v Welsbach Elec. Corp., 138 AD2d 477, 478).
CONNOLLY, J.P., WOOTEN, FORD and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court