Smith v A.O. Smith Water Prods. Co. (2025 NY Slip Op 25243)

[*1]

Smith v A.O. Smith Water Prods. Co.

2025 NY Slip Op 25243

Decided on November 12, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 12, 2025
Supreme Court, New York County

Larry Smith, Plaintiff,

against
A.O. Smith Water Products Co., AERCO INTERNATIONAL, INC, AIR & LIQUID SYSTEMS CORPORATION, AS SUCCESSOR-BY-MERGER TO BUFFALO PUMPS, INC, AMCHEM PRODUCTS, INC., N/K/A RHONE POULENC AG COMPANY, N/K/A BAYER CROPSCIENCE INC, BMCE INC., F/K/A UNITED CENTRIFUGAL PUMP, BURNHAM, LLC, INDIVIDUALLY, AND AS SUCCESSOR TO BURNHAM CORPORATION, BW/IP, INC. AND ITS WHOLLY OWNED SUBSIDIARIES, CANVAS MW, LLC. FORMERLY KNOWN AS THE MARLEY-WYLAIN COMPANY, LLC, CARRIER CORPORATION, CLYDE UNION, INC, COLUMBIA BOILER COMPANY OF POTTSTOWN, COMPUDYNE CORPORATION, INDIVIDUALLY, AND AS SUCCESSOR TO YORK SHIPLEY, INC, CROWN BOILER CO., F/K/A CROWN INDUSTRIES, INC, DAVID FABRICATORS INC A/K/A DAVID ASBESTOS CORP, ECR INTERNATIONAL, CORP., F/K/A DUNKIRK BOILERS AND UTICA BOILER COMPANY, FLOWSERVE US, INC. INDIVIDUALLY AND SUCCESSOR TO ROCKWELL MANUFACTURING COMPANY, EDWARD VALVE, INC., NORDSTROM VALVES, INC., EDWARD VOGT VALVE COMPANY, AND VOGT VALVE COMPANY, FMC CORPORATION, ON BEHALF OF ITS FORMER CHICAGO PUMP & NORTHERN PUMP BUSINESSES, FORD MOTOR COMPANY, GARDNER DENVER, INC, GENERAL ELECTRIC COMPANY, GOULDS PUMPS LLC, GRINNELL LLC, HALE PRODUCTS, INC, HARSCO CORPORATION, AS SUCCESSOR TO PATTERSON-KELLEY COMPANY, INC., INDIVIDUALLY AND D/B/A PATTERSON-KELLEY, HOLBY VALVE COMPANY, INC, HONEYWELL INTERNATIONAL, INC., F/K/A ALLIED SIGNAL, INC./BENDIX, IMO INDUSTRIES, INC, INTERNATIONAL PAPER COMPANY, INDIVIDUALLY AND AS SUCCESSOR TO CHAMPION INTERNATIONAL CORPORATION, AS SUCCESSOR TO UNITED STATES PLYWOOD CORPORATION, ITT LLC., INDIVIDUALLY AND AS SUCCESSOR TO BELL & GOSSETT AND AS SUCCESSOR TO KENNEDY VALVE MANUFACTURING CO., INC, JENKINS BROS, KAISER GYPSUM COMPANY, INC, KEELER-DORR-OLIVER BOILER COMPANY, KOHLER CO, LENNOX INDUSTRIES, INC, LEVITON MANUFACTURING CO., INC, MORSE TEC LLC, F/K/A BORG WARNER MORSE TEC LLC AND SUCCESSOR-BY-MERGER TO BORG-WARNER CORPORATION, NIBCO INC, PARAMOUNT GLOBAL, F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A/ VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION, PFIZER, INC. (PFIZER), PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION (ABEX), QCP, INC., INDIVIDUALLY AND AS SUCCESSOR TO BAKERS PRIDE OVEN COMPANY, INC, REDCO CORPORATION F/K/A CRANE CO, RHEEM MANUFACTURING COMPANY, SCHNEIDER ELECTRIC USA, INC. FORMERLY KNOWN AS SQUARE D COMPANY, SLANT/FIN CORPORATION, TACO, INC, U.S. RUBBER COMPANY (UNIROYAL), UNION CARBIDE CORPORATION, UTICA BOILERS, INC., INDIVIDUALLY AND AS SUCCESSOR TO UTICA RADIATOR CORPORATION, VIKING PUMP, INC, WARREN PUMPS, LLC, TENNECO AUTOMOTIVE OPERATING COMPANY INC., BURNHAM HOLDINGS, INC., Defendants.

Index No. 190208/2023

For Plaintiffs
Weitz & Luxenberg PC
By: Jason P. Weinstein, Esq. 
For Defendant Jenkins Bros.
Clyde & Co US LLP
By: Kenneth C. Cooper, Esq.

Hasa A. Kingo, J.

Plaintiffs Larry Smith and Phyllis Smith move in limine for an order precluding the defendants — and in particular trial defendant Jenkins Bros. — from introducing any evidence at trial regarding: (1) Larry Smith's past drug use or substance abuse; and (2) his prior arrests, convictions, or incarceration (including any underlying facts of those crimes). Plaintiffs contend that Mr. Smith's history of illicit drug use, as well as criminal convictions dating back three decades or more, are irrelevant to any issue in this asbestos personal injury trial and that any minimal probative value is far outweighed by the danger of unfair prejudice. Jenkins Bros. opposes the motion, arguing that this evidence is relevant to Mr. Smith's health, life expectancy, and credibility, and that preclusion would unfairly impede its ability to challenge his testimony.
BACKGROUND AND PROCEDURAL HISTORY
This action is part of the New York City Asbestos Litigation ("NYCAL"). Plaintiff Larry Smith alleges he developed lung cancer as a result of exposure to asbestos-containing products for which the defendants, including Jenkins Bros., are responsible. The case is scheduled for trial. In August 2023, Mr. Smith was deposed. During his deposition, he acknowledged that he had been incarcerated on multiple occasions in the early 1990s. He testified that he was convicted "five or six" times in Nassau County during that period, for offenses including criminal possession of stolen property and sale/possession of a controlled substance, serving a total of about six to seven years in prison. These convictions all occurred approximately thirty or more years ago (primarily in the 1990s). Mr. Smith further admitted to past illicit drug use, explaining that his criminal troubles were related to addiction issues, and stated, "Not [*2]something I'm proud of, but it happened."
Notably, Mr. Smith did not testify to any conviction for a violent crime. However, Jenkins Bros. asserts in its opposition that public records show Mr. Smith (under a former alias) pleaded guilty to attempted robbery in the second degree in 1981 — a conviction predating even the ones he disclosed by roughly a decade. Jenkins maintains that Mr. Smith omitted this 1981 violent felony from his deposition testimony, and it seeks to use that fact to impeach his credibility. Plaintiffs respond that no certified record of any such conviction has been produced, and in any event all of Mr. Smith's convictions (whether in 1981 or the 1990s) are too remote in time to have legitimate bearing on this trial. It is undisputed that after the early 1990s, Mr. Smith has had no further contacts with the criminal justice system.
Following Mr. Smith's deposition, none of the defendants pursued any discovery to obtain documentation of his criminal record. Defendants never demanded authorizations or otherwise sought to independently verify the details of his convictions or any past drug treatment. Indeed, Jenkins Bros.' counsel has confirmed that the only evidence of Mr. Smith's criminal history in their possession is the plaintiff's own deposition testimony and certain decades-old newspaper clippings referencing the 1981 incident. Defendants likewise did not identify any expert witness to opine on Mr. Smith's history of drug use or its potential effect on his health. Jenkins Bros.' CPLR § 3101(d) expert disclosure lists no expert testimony whatsoever regarding drug or substance abuse. The sole medical expert disclosed (Dr. Stanley Fiel) is expected to testify about asbestos-related diseases and their impact on life expectancy — with no reference to drug use. In sum, there is no expert or medical proof tying Mr. Smith's remote drug history to any issue in this case.
Plaintiffs filed the instant motion in limine on November 10, 2025, seeking to preclude any evidence or reference to Mr. Smith's prior drug use or criminal record. Jenkins Bros. submitted written opposition on November 11, 2025, and the motion is now being addressed by the court prior to jury selection. No other defendant has submitted opposition papers or arguments; however, the relief sought is directed against all defendants.

ARGUMENTS
Plaintiffs argue that Mr. Smith's decades-old criminal record and past substance abuse have no legitimate relevance to the issues to be tried — namely, whether defendants' asbestos products caused his illness, the extent of his damages, and the credibility of competing expert evidence. They note that the convictions at issue date back approximately 30 to 40 years and are "too remote to be relevant in this trial." Any probative value they might hold on the issue of Mr. Smith's credibility, plaintiffs contend, is negligible given the extraordinary remoteness and the nature of the offenses, which largely stemmed from youthful drug addiction rather than fraudulent or deceitful conduct. On the other hand, the prejudicial impact of such evidence would be severe: its "sole purpose" would be to embarrass, harass, and smear Mr. Smith before the jury. Plaintiffs emphasize that evidence of illegal drug use or ancient convictions would invite the jury to view Mr. Smith as a bad or irresponsible person, thereby distracting from the merits of the case and depriving him of a fair trial.
Plaintiffs further maintain that Mr. Smith's past drug use is wholly irrelevant to any material fact in dispute. There is no claim in this case concerning Mr. Smith's mental health or substance abuse, nor any expert proof linking his remote drug use to his cancer or life expectancy. Absent such a nexus, evidence of drug use does not "tend to prove the existence or nonexistence of a material fact directly at issue." In plaintiffs' view, Jenkins Bros.' suggestion that prior drug use might have affected Mr. Smith's health or memory is rank speculation unsupported by any disclosed evidence. They note that Jenkins did not comply with CPLR § 3101(d) to obtain a medical expert opinion on the effects of drug use, and no doctor will testify that Mr. Smith's life expectancy or condition was impacted by drug abuse. Lacking any foundation, any reference to drug use serves only to prejudice the jury and should be excluded.
With respect to the criminal convictions, plaintiffs acknowledge that CPLR § 4513 permits a witness's prior convictions to be used for impeachment, but stress that this is a discretionary, not absolute, [*3]rule. They argue that New York courts routinely preclude remote convictions when they have little bearing on credibility and carry a risk of unfair prejudice. Plaintiffs cite numerous authorities — from the Court of Appeals, the Appellate Division, First Department, and even prior NYCAL trial courts — holding that convictions older than a decade (and certainly those as old as 20—30 years) are generally too stale to be probative of a witness's present credibility. In particular, they highlight People v. Sandoval, 34 NY2d 371 (1974), where the Court of Appeals recognized that a "lapse of time" will diminish the materiality of prior conduct. They also point to Appellate Division, First Department, precedent like People v. Contreras, 108 AD2d 627 (1st Dept 1985), which reversed a conviction after the trial court indicated it would allow impeachment of a defendant with four convictions 18—20 years old, the appellate court holding those crimes "too remote in time to be truly probative on credibility." Likewise, in People v. Ellis, the Appellate Division, First Department, noted that the "essence" of Sandoval's rule is the lack of materiality and relevance of old conduct (94 AD2d 652, 652 [1st Dept 1983]). Plaintiffs argue Mr. Smith's situation is directly analogous: convictions three to four decades in the past, arising from addiction-driven behavior, have minimal probative value but a tremendous potential to "unfairly mar his credibility" in the eyes of the jury.
Plaintiffs further rely on civil cases underscoring the prejudicial effect of injecting a party's drug use or criminal history into trial when those matters are not truly at issue. For example, in Arroyo v. City of New York, 171 AD2d 541, 541 (1st Dept 1991). the Appellate Division, First Department, held that the introduction of portions of a plaintiff's hospital records revealing prior drug abuse "served to deprive plaintiff of a fair trial and clearly had a prejudicial effect on the jury." Plaintiffs also cite Cronin v. Gramercy Five Assoc., 233 AD2d 263 (1st Dept 1996), where the Appellate Division, First Department, prevented disclosure of a plaintiff's past drug/alcohol abuse in discovery because no link had been shown between that history and the injuries claimed. In Alford v. City of New York, 116 AD3d 483 (1st Dept 2014), the same court refused to compel disclosure of substance-abuse treatment records once the plaintiff withdrew any mental health claims, since the defendants failed to demonstrate that the information was genuinely relevant or necessary to the case (the "interests of justice" did not outweigh the plaintiff's confidentiality rights). By analogy, plaintiffs argue, Mr. Smith's past drug use has not been shown to bear on any claim or defense here — especially as he asserts no psychological injury or ongoing addiction issue — and thus any foray into that topic would be improper and prejudicial. In sum, plaintiffs urge the court to follow the weight of authority precluding remote and collateral matters that offer little beyond character assassination, and to grant the motion so that the trial may focus on the relevant evidence.
Jenkins Bros. opposes the motion, asserting that it has a good-faith basis and legal right to inquire into Mr. Smith's prior drug use and convictions as part of its defense. Jenkins argues first that Mr. Smith's history of drug use is relevant to his health and damages. It analogizes this to a smoking history: just as evidence of decades of cigarette smoking is routinely considered in an asbestos case (as it may affect causation, life expectancy, and damages), Jenkins contends that past illicit drug use "undoubtedly impacts his health" and could have contributed to his "past and present" condition, life expectancy, or pain and suffering. Jenkins further suggests that drug use might impair memory or cognitive function, positing that Mr. Smith's ability to recall events accurately could be diminished by a history of substance abuse. In its view, the jury is entitled to know about these aspects of Mr. Smith's health and lifestyle to fully evaluate the causes of his illness, his prior suffering, and the credibility of his testimony.
Jenkins distinguishes the plaintiffs' cited cases as inapposite. For instance, Jenkins points to Green v. City of New York, 281 AD2d 193 (1st Dept 2001), where prior drug use was deemed relevant in a medical context, and to cases from other Departments allowing discovery of substance abuse history when pertinent to physical conditions (L.T. v. Teva Pharms. USA, Inc., 71 AD3d 1400 [4th Dept 2010][denying a protective order on alcohol history]; Akel v. Gerardi, 193 AD3d 476 [1st Dept 2021][compelling disclosure of psychological history in a med mal case]). According to Jenkins, these cases show that evidence of substance use is not categorically off-limits, but rather can be relevant and admissible when linked to issues in the lawsuit. Jenkins argues that plaintiffs' reading of Alford v. City of [*4]New York, supra, is overbroad; it contends that Alford merely turned on a failure to outweigh confidentiality concerns after mental-health claims were withdrawn, not a blanket rule excluding substance history whenever mental condition is not at issue. Under Jenkins' reasoning, Mr. Smith's drug use history remains a relevant aspect of his overall health profile for the jury's consideration, and no comparable confidentiality or privilege concern exists here (since Mr. Smith's drug use is known and self-admitted).
Regarding Mr. Smith's criminal convictions, Jenkins Bros. argues that these go directly to his credibility as a witness. Jenkins emphasizes the well-established principle that "the credibility of a witness is always in issue," and a witness — including a civil plaintiff — may be confronted with prior criminal or immoral acts that bear on credibility. CPLR § 4513 expressly permits proof of a witness's prior conviction "for the purpose of affecting the weight of his testimony," whether by cross-examination or by record of conviction. Jenkins cites People v. Sandoval, supra, which held that "evidence of prior specific criminal, vicious or immoral conduct should be admitted if the nature of such conduct bears logically and reasonably on the issue of credibility" (34 NY2d at 376). Here, Jenkins contends, Mr. Smith's past crimes — including attempted robbery and possession of stolen property — plainly meet that test, as they reflect a willingness to put his own interests above those of society or his victims. Such conduct, Jenkins argues, is highly probative of a witness's veracity, since it suggests a character that may disregard the oath and truth to serve self-interest (see Sandoval, 34 NY2d at 377).
Jenkins strongly disputes the notion that Mr. Smith's convictions are too old to matter. Citing People v. Walker, 83 NY2d 455 (1994), and other authority, Jenkins notes that there are "no per se rules" requiring exclusion of an older conviction due solely to its age. Courts have frequently permitted impeachment with convictions from 10, 15, or even 20 years before trial. Indeed, Jenkins points out, in numerous cases appellate courts allowed cross-examination on criminal convictions more than a decade old, recognizing that temporal remoteness is only one factor for the trial court's discretion. For example, Jenkins cites Tripp v. Williams, 39 Misc 3d 318 (Sup. Ct., Kings County 2013), which collected cases upholding the use of convictions as old as 15—20 years. Jenkins thus contends that plaintiffs' emphasis on the 30-year span since Mr. Smith's convictions is misplaced; while unusual, such a time gap does not automatically bar the evidence, especially where the crimes are directly relevant to credibility. Jenkins argues that it is ultimately for the jury to decide how Mr. Smith's past affects his believability. They quote decisions reiterating that credibility determinations are the province of the jury, not the court. To deprive the jury of knowledge of Mr. Smith's prior crimes, Jenkins insists, would be to present a misleadingly sanitized version of his character and deny the defense a fair trial.
In support, Jenkins cites Sansevere v. United Parcel Serv.,, 181 AD2d 521 (1st Dept 1992), where the Appellate Division, First Department, held that a trial court reversibly erred by refusing to let the defense impeach a key eyewitness with his criminal record. There, the trial judge had deemed it "grossly unfair" to question the witness about convictions unrelated to the accident, but the appellate court disagreed, ruling that the defense was entitled to expose that witness's background so the jury would not be left believing "no reason whatsoever to doubt [his] veracity." (id. at 522). Analogizing to Sansevere, Jenkins contends that if it is barred from probing Mr. Smith's criminal past, the jury will be improperly led to believe he has a clean record, thereby granting him unearned credibility. Jenkins also notes that Mr. Smith is "the most crucial witness" in this trial — as the plaintiff, his testimony about his asbestos exposure, work history, and health is central — and preventing full impeachment would severely prejudice the defense. In Jenkins' view, the probative value of hearing about Mr. Smith's convictions (to accurately gauge his truthfulness) far outweighs any unfair prejudice, particularly since the jury in a civil trial will be instructed to consider such evidence only as to credibility. Jenkins emphasizes that at least one of Mr. Smith's crimes (attempted robbery) was of a violent and "immoral" nature, and that Mr. Smith failed to disclose it initially. That omission, Jenkins argues, makes it all the more legitimate to question him at trial — both to reveal the full extent of his past wrongdoing and to highlight the incomplete candor of his deposition testimony. According to Jenkins, so long as there is a good-faith factual basis for the inquiry [*5](here, the newspaper records and Mr. Smith's own admissions), New York law permits cross-examination on any prior vicious or criminal act relevant to credibility (Murphy v. Estate of Vece, 173 AD2d 445 [2d Dept 1991]). For all these reasons, Jenkins Bros. urges that plaintiffs' motion be denied in its entirety.

DISCUSSION
After careful consideration, the court grants plaintiffs' motion in limine. The court concludes that evidence of Mr. Smith's long-past drug use and criminal convictions is inadmissible in this trial. Such evidence fails the twin tests of relevance and fairness that govern admissibility. The governing legal standards in New York — as reflected in the CPLR, Court of Appeals precedent, and Appellate Division, First Department, case law — all counsel in favor of preclusion under the circumstances at bar. The court addresses in turn the two categories of evidence at issue: (1) Mr. Smith's history of drug or substance abuse, and (2) his prior criminal convictions.
I. Evidence of Past Drug Use
It is fundamental that to be admissible, evidence must be relevant, meaning it tends to prove or disprove a fact material to the case (People v. Robinson, 143 AD3d 744, 746 [2d Dept 2016]). Here, Mr. Smith's prior drug use (dating back to the 1980s—90s) does not bear on any material fact in this asbestos products liability action. The core issues for trial involve whether exposure to defendants' asbestos-containing products caused Mr. Smith's illness, whether defendants were negligent or otherwise liable, and the extent of his injuries and damages. Mr. Smith's personal history of drug use or addiction decades ago does not make any fact on liability or damages more or less probable. It has no logical connection to his occupational exposure to asbestos, the medical causation of his lung cancer, or the extent of his asbestos-related injuries. Jenkins Bros.' speculative assertions notwithstanding, there is no evidence that Mr. Smith's remote drug use contributed in any way to his developing cancer or impacts his prognosis. Indeed, Jenkins disclosed no expert testimony linking drug abuse to Mr. Smith's condition or life expectancy. Absent competent medical proof of such a link, the etiology of Mr. Smith's cancer will be determined by evidence of asbestos exposure and perhaps other recognized factors (such as smoking history, if any) — not unsupported conjecture about drug use. Simply put, evidence that Mr. Smith used illegal drugs many years ago does not "tend to prove the existence or nonexistence of a material fact" in dispute.
Nor is there any demonstrated relevance of past drug use to Mr. Smith's credibility or memory. Jenkins argues that drug use "undoubtedly" impacts memory and the ability to recall. But Jenkins proffers no scientific basis or factual showing that Mr. Smith has any cognitive impairments related to drug use. Mr. Smith is not alleged to be under the influence of any substance while testifying, nor to suffer any lingering mental effects of addiction. A decades-ago history of substance abuse, without more, does not reasonably indicate that a witness is unable to recollect events or will testify inaccurately. To allow impeachment on this ground would effectively invite the jury to engage in rank speculation that because Mr. Smith once used drugs, his perception or memory must be unreliable. That is not a valid inference absent evidence tying past drug abuse to some lasting mental incapacity. New York courts have recognized that not every bad act in a witness's past is relevant to credibility; the conduct must have a reasonable bearing on veracity or accuracy (see, e.g., Badr v. Hogan, 75 NY2d 629, 634 [1990][cross-examination on prior misconduct "must have some tendency to show moral turpitude to be relevant on the credibility issue"]). Here, Mr. Smith's past drug use does not inherently demonstrate moral turpitude or dishonesty — it reflects a personal vice or addiction, not a propensity to lie. In fact, the Court of Appeals in Sandoval explicitly observed that crimes or conduct stemming from addiction (such as drug or alcohol abuse) "may have lesser probative value as to lack of in-court veracity" (34 NY2d at 377). Mr. Smith's admitted history falls squarely in that category: acts "occasioned by addiction or uncontrollable habit" are not strong indicators of a witness's truthfulness. Thus, the probative value of Mr. Smith's prior drug use on the issue of credibility is minimal at best.
Even assuming arguendo that Mr. Smith's drug use had some marginal relevance, relevance is not always enough to render evidence admissible (People v. Cortez, 22 NY3d 1061 [2014]). Trial courts have [*6]broad discretion to exclude evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or undue delay (id.; see also People v. Scarola, 71 NY2d 769, 777 [1988]). Here, any slight probative worth of decades-old drug use is dwarfed by its capacity to inflame the jury and divert attention from the issues that matter. Evidence that a party used illegal drugs can trigger visceral negative reactions. A juror learning that Mr. Smith abused drugs in his past might unjustly regard him as irresponsible, immoral, or the "author of his own misfortune," even though his drug use has no causal relationship to his asbestos disease. There is a substantial risk that such evidence would "smear" Mr. Smith's character in the eyes of the jury, inviting them to judge him for past misdeeds rather than the facts of the case. This is precisely the sort of unfair prejudice that CPLR § 4011 and our evidentiary rules guard against. The Appellate Division, First Department, has long recognized the danger: in Arroyo v. City of New York, supra, for example, the defendant had introduced hospital-record entries about the plaintiff's prior drug abuse, which the appellate court condemned as having a clear prejudicial effect that deprived the plaintiff of a fair trial. The prejudicial impact in Arroyo stemmed from painting the plaintiff as a drug user in front of the jury — a tactic that is equally prejudicial here and equally irrelevant to the issues at bar.
Jenkins Bros.' purported justifications for using the drug history are unavailing. Its analogy to smoking history fails because, unlike smoking (a known cause of lung disease), past use of illicit drugs has not been shown to bear on the causation or progression of Mr. Smith's cancer. If anything, Jenkins' argument underscores why an expert was required: the effect of drug use on health or life expectancy is a technical matter for medical testimony, not lay conjecture. Since no expert support was disclosed or offered, Jenkins cannot bootstrap a medical argument into a jury prejudice one. The attempt to liken drug use to smoking is thus not only scientifically unsupported in this case, but also a distraction from the real evidence on causation.
Jenkins' suggestion that the jury needs to consider drug use as part of Mr. Smith's "health prior to diagnosis" or "past pain and suffering" is similarly speculative and unfair. There is no evidence that Mr. Smith's past drug use caused him any specific health impairment relevant to his damages claim. His damages relate to cancer and asbestos-related illnesses, not to any drug dependency or its consequences. Introducing evidence about a wholly unrelated form of past "self-harm" (if drug abuse can be so characterized) would likely confuse the issues — implying, without basis, that jurors should discount Mr. Smith's suffering or life expectancy because he may have engaged in unhealthy behavior long ago. In Cronin v. Gramercy Five Assocs., supra, the Appellate Division, First Department, barred discovery of the plaintiff's substance abuse history precisely because no link was established between that history and the injuries claimed (emotional distress after an accident); allowing such evidence would have been a fishing expedition and a source of prejudice rather than enlightenment (233 AD2d at 263). The same logic applies: absent a demonstrated nexus, inquiry into substance abuse serves only to prejudice and confuse the main issue and mislead the jury.
Finally, it bears noting that plaintiffs are not claiming any damages related to drug addiction (such as costs of rehabilitation, lost employment due to drug use, etc.), nor placing Mr. Smith's mental health in controversy. Thus, the concerns present in some cases cited by Jenkins — where a plaintiff's substance abuse or mental health records were sought because of a specific claim (see Alford, 116 AD3d at 484; Akel, 193 AD3d at 476) — are not present here. To the contrary, as in Alford, Mr. Smith's substance abuse history is collateral to this litigation. The court finds that Jenkins has failed to demonstrate any concrete relevance of that history. Without such a showing, the only consequence of introducing drug use evidence would be unfair prejudice. Because any probative value is remote and conjectural, and the danger of prejudice is clear and significant, the court exercises its discretion to exclude evidence of Mr. Smith's prior drug or substance use. This ruling is consistent with the Appellate Division, First Department's admonition that trial courts should be guided by "common sense and fairness" in evaluating such matters and avoid undue excursions into collateral issues (People v. Walker, 83 NY2d 455, 463 [1994]; People v. Duncan, 46 NY2d 74, 80 [1978]). The probative/prejudicial balance [*7]tips decidedly in favor of preclusion in this instance.
II. Impeachment by Remote Criminal Convictions
The second branch of the motion seeks to preclude Jenkins (and the other defendants) from introducing or referencing Mr. Smith's prior criminal convictions, all of which date from approximately 30 or more years ago. The legal framework for this issue is CPLR § 4513 and the case law governing use of convictions to impeach credibility. CPLR § 4513 provides that a person who has been convicted of a crime "is a competent witness; but the conviction may be proved, for the purpose of affecting the weight of his testimony, either by cross-examination . . . or by the record." By its terms, the rule permits impeachment with convictions, but it does not mandate that all convictions must be admitted; the trial court retains discretion to exclude such evidence in appropriate circumstances. As one commentator has noted, evidence of a conviction may be kept out if "the prior conviction has no bearing on the weight of the proffered testimony, or . . . is introduced primarily for the purpose of prejudicing the jury against the witness" (5 Weinstein-Korn-Miller, NY Civ. Prac. ¶ 4513.10). In other words, if a conviction is irrelevant or only marginally relevant to a witness's credibility, and seems proffered chiefly to smear the witness's character, the court acts within its discretion to preclude it (see Acunto v. Conklin, 260 AD2d 787, 790 [3d Dept 1999][upholding trial court's preclusion of plaintiff's prior conviction where it was not relevant to any issue in the trial]).
There is no doubt that credibility is always at issue when a party testifies, and New York courts generally allow broad cross-examination on matters bearing on credibility. This includes, as a general rule, the fact of criminal convictions or specific immoral acts that suggest the witness's lack of veracity or dishonesty (see, e.g., Badr v. Hogan, 75 NY2d at 634 [a witness may be questioned about prior vicious or criminal acts that indicate the witness to be unworthy of belief, provided there is a good-faith basis]; 1515 Summer St. Corp. v. Parikh, 13 AD3d 305, 307 [1st Dept 2004][same, citing Sansevere and Badr]). In criminal cases, the procedure of a Sandoval hearing exists to balance the probative value of a defendant's prior crimes against the risk of undue prejudice if the defendant testifies. Although this is a civil case (and Mr. Smith is a plaintiff, not a criminal defendant), the court finds the Sandoval principles instructive because they articulate the same balancing that a civil trial court should undertake under common-law evidentiary discretion. People v. Sandoval, supra, teaches that the court must weigh the relevance of prior crimes to credibility against the possibility of "undue prejudice disproportionate to the probative value of the evidence of prior crimes" (34 NY2d at 375). Among the key considerations identified in Sandoval are the nature of the crimes, their bearing on honesty, and their remoteness in time (id. at 376—77). The Court of Appeals in Sandoval notably cautioned that "lapse of time" will "affect the materiality if not the relevance of previous conduct" (id. at 376). The court also warned against evidence which has no purpose other than to show a defendant's "criminal bent or character," as that would be improper propensity evidence that could sway a jury to disbelieve or punish the witness for past crimes rather than judge the testimony on its merits (id. at 376—77).
Applying these standards here, the court concludes that Mr. Smith's prior convictions — all of which are roughly 30 years old or older — must be excluded because (a) their probative value on the issue of credibility is extremely low due to their remoteness and the circumstances of the offenses, and (b) whatever slight probative worth they might hold is far outweighed by the danger of unfair prejudice to the plaintiffs' right to a fair trial.
The sheer antiquity of Mr. Smith's convictions greatly diminishes their relevance to his credibility today. It appears that Mr. Smith's most recent conviction was in the mid-1990s, approximately 30 years ago. One conviction (the 1981 attempted robbery) is over 40 years old. Mr. Smith was in his early adulthood at the time of these offenses; he is now in his late 60s. Since the 1990s, by all indications, he has led a law-abiding life. When a person has lived an entire generation without further transgressions, the inference that an old conviction reflects on their current propensity to tell the truth becomes tenuous. As the Appellate Division, First Department, has observed, when past convictions are "sufficiently remote in time," it may be concluded that they "should have had no substantive effect upon [the witness's] [*8]credibility" (People v. Ellis, 94 AD2d 652, 652 [1st Dept 1983]). This court reaches that conclusion here. A conviction from 30 or 40 years ago is simply too far removed from the present to shed reliable light on Mr. Smith's character for truthfulness in 2025. People can and do change over decades; the law recognizes that the probative linkage between past misdeeds and present credibility attenuates with time (Sandoval, 34 NY2d at 376).
To be sure, there is no absolute "time bar" — New York does not impose a strict cutoff beyond which a conviction is automatically inadmissible. Courts have discretion, and some cases have allowed impeachment with older convictions in particular circumstances. Jenkins correctly notes that, for example, a 15-year-old conviction might be deemed usable if highly relevant and if the witness's credibility is critical. However, we are far beyond those bounds here. As plaintiffs aptly cite, no New York appellate court has approved the use of a conviction as old as Mr. Smith's for impeachment. The decision in Tripp v. Williams, a well-reasoned trial court opinion, confirmed that exhaustive research found no "appellate decision that has permitted the use of a criminal conviction . . . where the conviction was 25 years old" (39 Misc 3d 318, 328 [Sup. Ct. Kings County 2013]). Mr. Smith's convictions exceed that 25-year threshold. In Tripp, Justice Battaglia noted that when a conviction becomes so stale, "[t]he probative value as to credibility under such circumstances is substantially diminished" and cannot justify the potential prejudice. This view is echoed by many other courts. For example, in People v. Contreras, supra, the Appellate Division, First Department, held it was error to allow impeachment with convictions 18—20 years old, deeming them too remote to be "truly probative on credibility" (108 AD2d at 628). In People v. Young, the Appellate Division, Third Department, similarly noted that convictions 15 years or older were generally found too prejudicial and not allowed (249 AD2d 576, 581 [3d Dept 1998]). And our own Appellate Division, First Department, in People v. Pippin approved the exclusion of a 12-year-old conviction as too remote (67 AD2d 413, 418 [1st Dept 1979]). The pattern in the case law is clear: while not an absolute rule, the more distant the conviction, the more skeptical courts are of its probative value. Mr. Smith's convictions, being three to four decades old, lie well beyond the range that courts have typically found acceptable, especially in the absence of intervening misconduct.
It is also significant that Mr. Smith's prior crimes, by their nature, do not directly implicate truth-telling in the way that, for instance, perjury, fraud, or forgery would. His convictions (as disclosed) were for possession of stolen property and drug offenses; the one additional offense Jenkins identifies is attempted robbery. These are indeed crimes reflecting "immoral or vicious" acts to an extent — notably the theft-related crimes could indicate dishonesty or placing self-interest above the law. Under Sandoval, crimes involving theft or larceny may bear on credibility because they suggest a willingness to deliberately flout societal norms for personal gain, which might translate into a willingness to lie under oath. However, even that inference has limits. Sandoval itself drew a distinction between crimes of calculated dishonesty and crimes stemming from addiction or violence unaccompanied by deception (34 NY2d at 376-77). Mr. Smith's crimes appear to fall in a gray area: the stolen property offense suggests a form of theft (hence dishonesty), while the drug possession/sale offenses are more reflective of addiction-related conduct, which Sandoval indicated carry "lesser probative value . . . as to veracity". Attempted robbery is a serious crime and involves larcenous intent coupled with potential violence, but here it is so old (from 1981) that its probative value is extremely attenuated. Moreover, it resulted in a plea to a lesser charge; we have scant details beyond the fact of the conviction. The court is not persuaded that these particular convictions, given their nature and vintage, provide meaningful insight into whether Mr. Smith is likely to testify truthfully. In contrast, the potential of this evidence to prejudice the jury is profound — a point the court turns to now.
Impeachment with prior convictions always carries some risk of prejudice, insofar as a juror might misuse the information (e.g., to conclude the witness is a generally bad person or has a propensity to commit wrongdoing). In a civil trial, the concern is that jurors might discredit a plaintiff's claim or character not based on the facts of the case, but due to unrelated past crimes. This is especially true when the crimes are dramatic or inflammatory — for instance, a violent felony like robbery. Here, allowing [*9]Jenkins Bros. to expose that Mr. Smith was convicted of attempted robbery in the early 1980s could very well cause jurors to view him with suspicion or distaste unrelated to the merits of his asbestos claim. They might improperly infer, "If he tried to rob someone, he might be capable of lying to us," or even punish him in their verdict for being a felon. The law strives to prevent such propensity-based reasoning. As the Court of Appeals admonished, evidence should not be admitted for the sole purpose of showing a witness's "criminal bent or character" (Sandoval, 34 NY2d at 376-77). Yet that is essentially what Jenkins seeks to do: highlight Mr. Smith's old criminal past to suggest he is not worthy of belief. At bottom, Jenkins's argument is that once a person has committed crimes, they are forever tainted as less credible and the jury should know it. But that is an overbroad and prejudicial proposition, especially after so much time has elapsed. The prejudice is amplified by the remoteness: the jury may wonder why such ancient history is being brought up and infer that "where there's smoke, there's fire" — i.e., Mr. Smith must have a long track record of bad behavior that the court is allowing them to hear, so he must be untrustworthy. This inference would be far out of proportion to the actual probative worth of the evidence.
Furthermore, introducing these convictions would necessitate a detour into collateral matters that could confuse the jury and waste time. Mr. Smith's testimony would have to explain the circumstances of convictions from the 1980s/90s, potentially leading to mini-trials about events from a lifetime ago. This would not only prolong the proceedings but also risk shifting the focus from defendants' conduct (allegedly exposing Mr. Smith to asbestos) to Mr. Smith's own past conduct. The Court of Appeals has explicitly held that even relevant impeachment evidence may be excluded to avoid undue exploration of collateral matters (People v. Duncan, 46 NY2d at 80). Allowing Jenkins to delve into each of Mr. Smith's convictions (dates, nature, his alias, etc.) would undoubtedly sidetrack the trial with collateral issues and possibly confuse jurors about what they are supposed to decide. This is another facet of undue prejudice and trial inefficiency that weighs against admission.
The court acknowledges Jenkins Bros.' reliance on Sansevere and similar cases emphasizing a defendant's right to impeach a witness for credibility. However, those cases are distinguishable. In Sansevere, the witness whose criminal record was at issue was an eyewitness to the accident central to that case, and the trial court had completely barred any mention of his multiple convictions, thereby misleading the jury into thinking he had a clean background. The Appellate Division, First Department, found that to be an abuse of discretion in that scenario — effectively, the jury was deprived of highly relevant information bearing on the reliability of a key third-party witness's account. Sansevere does not stand for the proposition that all convictions, no matter how old or tangential, must be admitted. It stands for the proposition that a trial court should not foreclose legitimate lines of impeachment that could materially affect a jury's view of a critical witness's credibility. Here, unlike in Sansevere, we are dealing with extremely remote convictions and a party-witness whose credibility can be adequately assessed through other means. Mr. Smith will be subject to cross-examination on many fronts (inconsistencies in his statements, the specifics of his work history, potential bias due to his interest in the case's outcome, etc.). The jury will not be under the illusion that he is saintly or beyond reproach; they will judge his credibility by observing his demeanor and comparing his testimony against other evidence. The absence of his 30-year-old criminal record will not "mislead" the jury — indeed, given its remoteness and irrelevance to the facts, the jury would likely give it little weight even if allowed. But the far greater danger is that including it would inject an improper basis for discrediting Mr. Smith (his past character rather than his present testimony), or for diminishing his claim (jurors might subconsciously devalue the compensation for someone with a checkered past). The trial court's duty is to ensure a fair trial, and that includes protecting against evidence whose primary effect would be to "deprive [a] plaintiff of a fair trial" (Gorman v. Gorman, 36 AD2d 767, 767 [2d Dept 1971]). In this court's assessment, admitting Mr. Smith's ancient convictions would do just that — deprive him of a trial based on the merits of his case, by unfairly prejudicing the jury.
It is also noteworthy that one of the convictions Jenkins is most eager to introduce — the 1981 attempted robbery — was not disclosed by Mr. Smith at deposition. Jenkins argues that this omission itself [*10]demonstrates why the jury must hear about it, implying that Mr. Smith may have intentionally concealed a particularly unsavory part of his past. The court is not persuaded by this bootstrap argument. First, it appears Mr. Smith answered all questions asked of him at deposition; he admitted multiple convictions and incarceration. He was not directly asked about 1981 or any alias (the question of how the topic was framed is unclear in the record before the court). There is no evidence that he deliberately lied — he may well have misunderstood or forgotten that very old conviction, especially if it occurred under a different name over forty years ago. In any event, even if the omission were intentional, using it at trial would create a sideshow about whether Mr. Smith tried to hide a conviction, which then invites explanation or rebuttal. This distracts from the main issues. Moreover, the omission argument is somewhat circular: it posits that because he didn't mention a remote conviction, that makes the remote conviction relevant to his credibility. But if the conviction itself is irrelevant or too prejudicial (which is this court's finding), then his failure to recall or mention it is likewise of minimal probative value and cannot independently justify its admission. The better course is to avoid litigating a collateral question (did plaintiff fully disclose his priors?) and keep the focus on the substantive evidence.
Finally, the court must consider the balance between the right of a civil defendant to impeach a witness and the right of the plaintiff to a fair trial on the merits. New York law certainly affords a civil litigant "broad authority to use the criminal convictions of a witness to impeach . . . credibility," but it simultaneously holds that "the nature and extent of cross-examination, including with respect to criminal convictions, remains firmly within the discretion of the trial court" (Ubiles v. Halliwell-Kemp, 167 AD3d 1511, 1512 [4th Dept 2018]). 
Here, the court has exercised its sound discretion to limit cross-examination in a manner that serves the interests of justice. The ordinary principles of common sense and fairness (Walker, 83 NY2d at 463) dictate that dragging a plaintiff's 30- to 40-year-old convictions into an asbestos trial will do far more harm than good to the truth-seeking process. The court is mindful that the jury's role is to assess credibility, but it is the court's role to ensure the jury receives evidence that will genuinely help that assessment rather than distort it. The jury will have "reason to doubt" a witness's veracity, in the Sansevere phrase, whenever there is legitimate impeachment evidence. In this case, there will be ample opportunity for Jenkins Bros. to challenge Mr. Smith's credibility through legitimate means — inconsistent statements, the implausibility of certain assertions if any, bias, interest in the outcome, etc. Excluding these ancient convictions does not render Mr. Smith immune from challenge; it simply removes an unfair and only marginally probative line of attack. The Appellate Division, First Department's decision in People v. Contreras is instructive: the trial court there sought to allow 18—20 year old convictions but was reversed, the appellate court noting that the convictions' age made them not truly probative of credibility (108 AD2d at 628). If convictions two decades old were found to add so little to a jury's evaluation of a witness's honesty that their admission was deemed error, then certainly convictions three to four decades old should be viewed with even greater skepticism.
In sum, considering all the factors — the extreme remoteness of the convictions, their limited bearing on veracity (especially those related to addiction), the high risk of prejudice, the likelihood of confusing or distracting the jury, and the availability of other means to assess credibility — the court concludes that evidence of Mr. Smith's prior criminal convictions must be excluded. This ruling is consistent not only with the Sandoval balancing test applied by analogy, but also with numerous New York precedents. The Court of Appeals and the Appellate Division, First Department, have repeatedly upheld trial courts in excluding or limiting impeachment with prior crimes where the circumstances warranted it, emphasizing fairness and the avoidance of undue prejudice over a rigid adherence to the admissibility of anything labeled "credibility" evidence (see People v. Walker, 83 NY2d at 463 [trial courts must exercise discretion guided by fairness]; People v. Duffy, 36 NY2d 258, 262 [1975][even where prior conviction is technically admissible, the trial court may exclude it if probative value is outweighed by danger of prejudice or confusion]; People v. Duncan, 46 NY2d at 79-81 [court may exclude impeachment evidence to prevent diversion into collateral matters]). The court's ruling today [*11]falls well within the ambit of those principles. It bears emphasis that no party has an absolute right to impeach with every prior conviction; the right is a qualified one, tempered by the demands of justice. Here, justice demands that Mr. Smith's trial be decided on relevant, material facts — not on jurors' potential bias against him as a former addict or ex-felon.
For all the foregoing reasons, the court finds that the evidence which Jenkins Bros. seeks to introduce — Mr. Smith's decades-old drug use and criminal convictions — is inadmissible due to its minimal probative value and substantial risk of unfair prejudice. The governing standards in the Appellate Division, First Department, and New York law generally support the exclusion of such remote and collateral matters in order to ensure a fair trial on the merits. The court is not persuaded by Jenkins Bros.' arguments to the contrary; indeed, even the cases relied upon by Jenkins recognize the trial court's discretion and the need for a logical nexus between the evidence and the issues in the case — a nexus absent here. Mr. Smith's credibility can be effectively tested without reference to his life choices over a generation ago, and the jurors can fairly judge his claims without the shadow of unrelated criminal stigma. Accordingly, it is hereby
ORDERED that plaintiffs' motion in limine is granted in its entirety; and it is further
ORDERED that Defendants (including Jenkins Bros.) are hereby precluded from offering any evidence, testimony, or reference at trial to: (1) plaintiff Larry Smith's past drug or substance use, abuse, or addiction; and (2) any arrest, criminal conviction, or period of incarceration of Mr. Smith, or any underlying facts relating thereto; and it is further
ORDERED that this preclusion encompasses the attempted robbery conviction of 1981 and all convictions from the 1990s, as well as any uncharged misconduct related to drug use or other criminal acts; and it is further
ORDERED that should defendants believe that plaintiffs "open the door" to such evidence through some unforeseen testimony, they must first seek permission from the court outside the presence of the jury before making any reference to these matters; and it is further
ORDERED that the parties shall confine their proof to the truly relevant issues in dispute. By doing so, the court ensures that the jury's verdict will rest on the evidence of asbestos exposure, causation, and damages — not on improper character judgments.
The foregoing constitutes the decision and order of the court.
DATE: 11/12/2025
HASA A. KINGO, JSC